## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION AT LEXINGTON

Oak 44 Property Management, LLC
c/o Stagnaro Saba & Patterson Co., LPA
2623 Erie Avenue
Cincinnati, OH 45208

        Plaintiff

v.

Justin Maddix
202 Primrose Circle
Richmond, KY 40475

and

Stephen Wood
251 Larue Apt. 408
Lexington, KY 40517

        Also serve at:
        Stephen Wood
        2365 Harrodsburg Rd, Suite A205
        Lexington, KY 40504

Lexington 859 Service, LLC
c/o its registered agent
United States Corporation Agents, Inc.
9900 Corporate Campus Dr Ste 3000
Louisville, KY 40223

Cayman Lane, LLC
c/o its registered agent
Stephen Wood
251 Larue Apt 408
Lexington, KY 40517

**Case no.** _____

**Judge** _____

**COMPLAINT FOR FRAUD**

1

Park 12 Property Management LLC
c/o its registered agent
Dan M. Rose Esq.
Rose Grasch Camenisch Mains
326 South Broadway
Lexington, Kentucky 40508


5515, LLC
c/o its registered agent
Dan Rose
326 South Broadway
Lexington, KY 40508

5515 Hunt Club Ln LLC
c/o its registered agent
Stephen Wood
2365 Harrodsburg Rd Ste A205
Lexington, KY 40504

       Defendants.

       For its complaint, plaintiff Oak 44 Property Management, LLC, alleges as follows:

       1.     The gravamen of this fraud case is that the individual defendants, Justin Maddix and Stephen Wood, used a series of sham companies and LLCs (the other defendants) to embezzle hundreds of thousands of dollars from their employer, plaintiff Oak 44 Property Management LLC.

Parties, jurisdiction, and venue.

2.      This court has diversity jurisdiction because the parties are completely diverse (the plaintiff is a citizen of Arizona; all defendants are citizens of Kentucky) and the amount in controversy exceeds $75,000, for which the defendants are jointly liable under Kentucky law.

3.      Plaintiff Oak 44 is a Wyoming limited liability company whose sole member is John Gaston. Gaston is a citizen of Arizona.

4.      Defendant Justin Maddix is a citizen of Kentucky residing at 202 Primrose Circle, Richmond, Madison County, Kentucky.

5.      Defendant Stephen Wood is a citizen of Kentucky residing at 251 Larue Apt. 408, Lexington, Fayette County, Kentucky.

6.      The defendant LLCs are all either single-member or two-member LLCs, and in each case all members are citizens of Kentucky. More specifically:

    a.   Lexington 859 Service, LLC is a Kentucky limited liability company, the sole member of which is Maddix. Maddix is a Kentucky citizen.

    b.   Cayman Lane, LLC is a Kentucky limited liability company, the sole member of which is Wood. Wood is a Kentucky citizen.

    c.   Park 12 Property Management LLC is a Kentucky limited liability company, the sole member of which is Wood. Wood is a Kentucky Citizen.

3

d.  5515, LLC is a Kentucky limited liability company, the sole member of which is non-party Dan Rose. Rose is a Kentucky citizen in or around Lexington. Wood is the manager of 5515, LLC.

e.  5515 Hunt Club Ln LLC is a Kentucky limited liability company, the sole member of which is Wood. Wood is a Kentucky citizen. 5515 Hunt Club Ln has registered the assumed name The Madison Apartments with the Kentucky Secretary of State.

7.  Venue is proper in this district under 28 USC 1391(b)(1) because all defendants reside in the same state and one or more defendant resides in this district.

8.  Alternatively, venue is proper in this district under 28 USC 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

<u>The scheme generally</u>

9.  Oak 44 is in the business of property management, and at all relevant times managed several apartment complexes in the Lexington and Louisville areas.

10.  Oak 44 employed approximately 8 people to manage day-to-day operations of those complexes, including Maddix and Wood.

11.  Maddix and Wood were supervisory employees and as such were authorized to use Oak 44's credit accounts, including both its American Express card and its credit accounts with certain vendors, such as Home Depot and Lowe's.

4

12.     Unbeknownst to Oak 44, Maddix and Wood engaged in a scheme to defraud Oak 44 by using Oak 44's accounts to pay for both personal expenses and expenses of the defendant LLCs, none of which have any relation to any of the apartment complexes that Oak 44 manages.

13.     Unbeknownst to Oak 44, Maddix and Wood additionally used at least one sham LLC (defendant Lexington 859) to inflate the expenses of Oak 44's properties and skim money off the top of legitimate expenses.

14.     Oak 44's investigation is ongoing, but to date has uncovered well over $100,000 in theft by the defendants, not including the costs of investigation (such as accounting services) and attorney's fees, both of which Oak 44 is entitled to recover under Kentucky law.

15.     When confronted with evidence of their fraud, both Maddix and Wood offered to repay a small part of the money they have stolen, but have not repaid Oak 44 in full (or anything close to it) and Oak 44's outstanding damages are well into six figures.

16.     What follows is a non-exhaustive list of fraudulent transactions discovered by Oak 44 to date.

<u>The Cayman scheme</u>

17.     Defendant Cayman Lane LLC owns a single-family home at 3660 Cayman Lane, Lexington, Fayette County, Kentucky.

18.     The Cayman Lane home is a "flip" project operated by Wood and Maddix for personal profit. It has no relationship to Oak 44. (Wood is the sole member of Cayman Lane LLC.)

19.     On or about March 3, 2023 Wood ordered from Home Depot store no. 2307 a pair of Rheem-brand "performance platinum" tankless water heaters at a total cost of $2979.72, as evidenced by Home Depot invoice no. H2307-172867.

20.     Wood paid for the water heaters with Oak 44's credit card, and claimed that they were needed for properties managed by Oak 44 (namely, the "Devonport" and "Cambridge" apartment complexes).

21.     The water heaters were neither delivered to nor installed at those apartment complexes. In fact, tankless water heaters are not compatible with the apartment units at those complexes.

22.     Instead, those water heaters were delivered to and installed at the Cayman Lane house, as part of the renovation or "flip" of that home.

23.     On or about April 25, 2023 Wood ordered from Home Depot store no. 2303 a variety of fixtures (such doorknobs and handles, deadbolts, and exterior garage lamp shades) for a total cost of $1538.34, as evidenced by Home Depot invoice no. H2303-225431.

24.     Wood paid for the fixtures with Oak 44's credit card, and claimed that they were needed for another property managed by Oak 44 (the "Crosskeys" apartments).

25.     The fixtures were neither delivered to nor installed at that apartment complex; they were installed at the Cayman Lane house. In fact, several of the fixtures (including most notably the exterior garage lamp shades) are visible in the MLS listing for the single-family home on Cayman Lane.

26.     On or about April 27, 2023 Wood rented equipment from Home Depot store no. 2307, for a total cost of $ 663.14, as evidenced by Home Depot invoice no. 2307-90-60229.

27.     Wood paid for the rental with the Oak 44 credit card, but used the equipment in the course of the renovation of the Cayman Lane house.

28.     On or about February 7, 2023 Wood hired Yesier Structural at a cost of $5800 to perform exterior building repair at the Cayman Lane house.

29.     Wood paid for that service with the Oak 44 credit card, claiming that it was needed for another Oak 44-managed property (the "Ironwood" apartments).

30.     On or about May 15, 2023 Wood charged $1267.15 at Lexington Trailer & Hitch, for equipment related to the Cayman Lane house.

31.     Wood charged that expense to the Oak 44 credit card, falsely claiming that the expense was necessary for multiple Oak 44-managed properties.

32.      In approximately late May 2023 Wood purchased $2759.87 worth of trees and shrubbery from Redmonds Garden Landscaping.

33.      At approximately the same time, Wood hired BlackHorse Landscaping at a cost of $4236.60 for landscaping services, which services included the installation of the plants from Redmonds Garden Landscaping.

34.      BlackHorse performed its work, including the installation of the Redmonds Garden plants, at the Cayman Lane house.

35.      Wood directed BlackHorse to falsify its invoice to reflect that the work was done at the Cambridge apartment complex. BlackHorse (which is not accused of any wrongdoing here) agreed to Wood's request change its invoice—but was fully cooperative in Oak 44's investigation of this fraud, and disclosed to Oak 44 that Wood had directed BlackHorse to falsify its invoice.

36.      Wood paid for the Redmonds Garden trees and shrubs, and the BlackHorse services, with Oak 44's credit card, and falsely claimed that the work was done at the Cambridge apartments.

37.      From about June 6, 2023 to July 6, 2023 Wood purchased from Ferguson Enterprises $24,889.13 worth of bathroom fixtures, kitchen fixtures, and other similar items.

38.    The bathroom and kitchen fixtures include those evidenced by Ferguson invoice numbers 4763668, 4763668-1, 4763668-2, and 4745987, which show (among other things):

a. two "modern brushed brass" faucets, tank levers, and heated toilet seats for the "master bathroom";

b. faucets, bathroom sinks, showerheads, and other fixtures for at least four "guest bath" or "powder" rooms;

c. faucets, a refrigerator, a cooktop, a cooktop hood, a double oven, a "microwave drawer", and a dishwasher—for the "indoor kitchen"; and

d. a faucet, a "pot filler," a sink, and garbage disposal for the *outdoor* kitchen.

39.    Those Ferguson invoices all identify the goods as having been "Sold to" "Stephen Wood, 3660 Cayman Lane," with the same "Ship to" address.

40.    The goods were in fact installed in the Cayman Lane house.

41.    Many of these fixtures, including in particular those in the outdoor kitchen, are visible in the MLS listing for the Cayman Lane house.

42.    Wood paid the Ferguson invoices with Oak 44's credit card, and falsely claimed that the goods evidenced by them were installed at various apartment complexes managed by Oak 44 (namely, the Devonport, Cambridge, Crosskeys, Ironwood, and "Eric Court" apartment complexes).

43.     None of the Oak 44-managed apartment complexes have units with outdoor kitchens or five bathrooms.

44.     Between January and July 2023 Maddix hired Maeser Master Services to perform $8210.02 worth of plumbing services at the Cayman Lane house.

45.     Maddix paid for the services with Oak 44's credit card.

46.     Between late June and early August 2023, either Wood or Maddix (or both) hired a company called "Steven Contracting" to perform renovation work at the Cayman Lane house, at a cost of at least $15,247.85.

47.     The principal of Steven Contracting is Maddix's brother-in-law, non-party Steven Ross.

48.     Steven Contracting's invoices were paid using Oak 44's credit card, even though no services were provided to or for any apartment complexes managed by Oak 44.

49.     Oak 44's investigation of Wood and Maddix's fraud related to Cayman Lane LLC is ongoing, but the total expenses fraudulently charged to and paid by Oak 44 total at least $80,837.66 identified to date, not including the cost of investigation and attorney's fees.

### Other fraud by Maddix and Wood

50.     Defendant Park 12 Property Management is (like Oak 44) in the business of managing apartment complexes.

10

51.     Park 12 Property Management is owned by Wood.

52.     Unbeknownst to Oak 44, while Wood and Maddix were employed by Oak 44 in its property-management business, they were simultaneously working in property management for Park 12 Property Management.

53.     On or about August 23, 2022 Wood purchased a variety of fixtures (e.g., doorknobs, switches, wall plates, a countertop, and about 289 square feet of faux-oak "Click Lock Luxury Vinyl Plank Flooring" from Home Depot store 2307 at a cost of $1414.52, as evidenced by Home Depot invoice no. H2307-158825.

54.     Wood paid that invoice with the Oak 44 credit card and falsely claimed that the goods were for a property managed by Oak 44 (the Eric Court property).

55.     The goods were not installed at that property; the invoice says they were for Park 12 Property Management.

56.     On or about August 27, 2021 Maddix purchased several lawn-care supplies from Home Depot store 2315 at a cost of $164.12, as evidenced by Home Depot invoice no. H2315-171450, which includes a statement that the goods were "Sold to" Maddix.

57.     Maddix paid that invoice with the Oak 44 credit card, and falsely claimed that the goods were for a property managed by Oak 44 (the Ironwood property).

58.     On or about January 30, 2023 Wood purchased eight "adhesive tub walls" from Home Depot store 2307 at a cost of $1823.03, as evidenced by Home Depot invoice no. H2307-170410.

59.     Wood paid that invoice with the Oak 44 credit card and falsely claimed that the goods were for a property managed by Oak 44 (the Eric Court property).

60.     The goods were not installed at that Oak 44 property; the invoice says they were for Park 12 Property Management.

61.     Also on or about January 30, 2023 Wood purchased sinks, countertops, and quarter round (flooring trim) from Home Depot store 2307 at a cost of $1394.78, as evidenced by Home Depot invoice no. H2307-170440.

62.     Wood paid that invoice with Oak 44's credit card, falsely claiming that the goods were for a property managed by Oak 44 (the Eric Court property).

63.     The goods were not installed at that property; the invoice says that they were for a Park 12 Property Management property.

64.     Also on or about January 30, 2023 Wood purchased framing nails, stair and carpet trim, construction adhesive, two extension cords, a putty knife, twelve tubes of sealant, two cabinet bases, an under-cabinet range hood, and a 20-ounce can of Red Bull, from Home Depot store no. 2307 at a total cost of $1108.89, as evidenced by Home Depot invoices H2307-170416 and H2307-170492.

65.     Wood paid that invoice with Oak 44's credit card, falsely claiming that the items were a property managed by Oak 44 (the Eric Court property).

66.     The goods were not installed or used at that property; the invoices say that they were for a Park 12 Property Management property.

67.     On or about March 15, 2023 Wood purchased approximately 2000 square feet of faux-hickory "Click Lock Luxury Vinyl Plank Flooring" from Home Depot store 2307 at a cost of $8049.22, as evidenced by Home Depot invoice no. H2307-173831.

68.     Wood paid that invoice with Oak 44's credit card, falsely claiming that the flooring was for two properties managed by Oak 44 (the Devonport and Cambridge complexes).

69.     That flooring was not installed at any property managed by Oak 44.

70.     Instead, the invoice for that flooring indicates that the "job description" was "Madison."

71.     The apartment complex known as "The Madison Apartments" is located at 5515 Hunt Club Lane in Louisville, Kentucky. Upon information and belief, the Madison Apartments is either owned by defendant 5515, LLC and leased to defendant 5515 Hunt Club Ln LLC, or is owned by defendant 5515 Hunt Club Ln LLC and leased to defendant 5515, LLC. Defendant 5515 Hunt Club Ln has registered "The Madison Apartments" as a trade name with the Kentucky Secretary of State.

72.     Park 12 Property Management manages The Madison Apartments.

13

73.     On or about March 19, 2023 Wood purchased "Keena Pearl" shower panels from Home Depot store no. 2303, at a cost of $601.60, as evidenced by Home Depot invoice no. H2303-222930.

74.     Wood paid that invoice with Oak 44's credit card, but the invoice shows that the goods were sold to "Park 12 Property Management."

75.     The shower panels were not installed at any Oak 44-managed property.

76.     On or about April 25, 2023 Wood purchased $1538.34 worth of fixtures from Home Depo store no. 2303, as evidenced by Home Depot invoice no. H2303-225431.

77.     Wood paid the invoice with Oak 44's credit card, but the invoice shows that the goods were sold to "Park 12 Property Management."

78.     The fixtures were not installed at any Oak 44-managed property.

79.     Maddix and Wood made many thousands of dollars of additional purchases at Home Depot, which Oak 44 is still working to catalog and investigate.

80.     Just as Maddix and Wood did with Home Depot, Maddix and Wood also spent thousands and thousands of dollars in purchases at Lowe's. To date, Oak 44 has been unable to fully investigate those purchases because Lowe's has refused to produce documentation for transactions in which Maddix and Wood were involved, without receiving a subpoena. Oak 44 therefore will move for leave to conduct discovery in

advance of any rule 26(f) conference, in order to seek that information immediately from Lowe's, and potentially from others.

81.     In addition to using Oak 44's accounts to purchase goods for use or installation at Park 12 properties, Maddix and Wood also directed Oak 44's employees to perform work or provide services at Park 12 properties, but told Oak 44 that the employes were performing work or providing services at Oak 44 properties.

<u>The Primrose Circle house</u>

82.     Upon information and belief, at least some of the purchases charged to Oak 44 by Maddix or Wood were actually for goods or services for Maddix's home at 202 Primrose Circle, Richmond, Kentucky.

<u>The Lexington 859 scheme</u>

83.     Maddix, in his managerial role for Oak 44, was responsible for and had the authority to hire tradesmen to provide necessary services to properties managed by Oak 44 in the Lexington area.

84.     Maddix used a sham company, defendant Lexington 859, to artificially inflate the cost of those services so he could skim money off the top.

85.     Beginning in at least July of 2022, when services (such as electrical work, painting, or plumbing) were required, Maddix would contact tradesmen on behalf of Oak 44 and obtain a quote and request an invoice for their services.

86.     After learning the true cost of the service, Maddix would increase that cost by an indeterminate amount (upon information and belief, more than 20% on average).

87.     Rather than paying the true invoice on behalf of Oak 44, Maddix would then create a fake invoice on the letterhead of Lexington 859 based on the fake, marked-up price.

88.     On at least some occasions, Maddix would additionally falsify information in the Lexington 859 invoice regarding what service was provided or where it was provided.

89.     Maddix would then pay the Lexington 859 invoice from Oak 44's accounts.

90.     Thus, from Oak 44's perspective, Lexington 859 appeared to be a bona fide general services and contracting company in the Lexington area providing genuine services to Oak 44.

91.     Oak 44 did not know that Lexington 859 was merely a sham entity, created by Maddix and existing solely on paper, to inflate Oak 44's costs.

92.     To date, Oak 44 has determined that Maddix submitted at least $174,890 in fraudulent Lexington 859 invoices to Oak 44, including but not limited to the following Lexington 859 invoice numbers:

   a.  498207

   b.  498209

16

c.  498257

d.  498302

e.  498303

f.  498305

g.  499111

h.  499112

i.  499114

j.  499115

k.  499120

l.  499125

m. 499133

n.  499121

o.  499132

p.  500166

q.  500169

r.  500177

s.  500182

t.  500184

u.  500187

v.  500202

w. 500214

x. 500255

y. 500279

z. 500288

93.     Not content to remit full payment to the tradesmen and skim only the

Lexington 859 markup, with respect to at least 9 invoices submitted by tradesmen of

vendors, Maddix and Lexington 859 did not pay the tradesman of vendor *at all*, and

kept the entire amount paid by Oak 44 to Lexington 859.

94.     Maddix and Wood have stolen significantly more money than what is

listed in this complaint (well in excess of $75,000) and Oak 44 is continuing to

investigate and catalog their thefts and deceptions.

## COUNT ONE – FRAUD

95.     Maddix and Wood's statements that they were purchasing goods or

services for Oak 44-managed properties were material, were knowingly false, and were

intended to induce reliance by Oak 44.

96.     Maddix and Wood's statements that Oak 44's employees were performing

work or providing services at Oak 44 properties, when they were actually performing

work or providing services at non-Oak 44 properties, were material, were knowingly

false, and were intended to induce reliance by Oak 44.

97.     Maddix's submission of inflated invoices from Lexington 859 was material, was knowingly false, and was intended to induce reliance by Oak 44.

98.     Oak 44 did in fact rely on those materially false representations, by paying for the goods or services that Oak 44 reasonably believed were necessary for and incurred on behalf of the properties it manages.

99.     Oak 44 was damaged as a direct result, in an amount to be determined, but well in excess of $100,000.

100.    Because of Maddix and Wood's intentional defrauding of Oak 44, Oak 44 is also entitled to an award of punitive damages and attorney's fees under KRS §411.184(2), the common law, and/or any other relevant statute or doctrine.

101.    Because Maddix and Wood improved the Cayman Lane LLC "flip" house with more than $80,000 of goods and services paid for by Oak 44, Oak 44 is entitled to an equitable lien, a materialman's lien, a constructive trust, or other similar interest over or in all property owned by Cayman Lane LLC, including in particular the home at 3660 Cayman Lane, Lexington, Fayette County, Kentucky.

## COUNT TWO – BREACH OF FIDUCIARY DUTY

102.    Maddix and Wood, as managerial or supervisory employees of Oak 44, owed a fiduciary duty to Oak 44.

103.    Maddix and Wood breached that duty by engaging the pattern of deceitful and fraudulent conduct described above.

19

104.    Oak 44 was directly damaged by that breach, in an amount to be

determined, but well in excess of $100,000.

105.    Maddix and Wood's breaches were done with oppression, fraud, or

malice, and as a result Oak 44 is entitled to an award of punitive damages and

attorney's fees under KRS §411.184(2), the common law, and/or any other relevant

statute or doctrine.

## COUNT THREE – UNJUST ENRICHMENT

106.    The defendants other than Maddix and Wood received a benefit from Oak

44 by virtue of their receipt (at the direction of Maddix and Wood) of goods or services

paid for by Oak 44.

107.    The defendants other than Maddix and Wood are aware of the benefit.

108.    The defendants other than Maddix and Wood have retained those benefits

without paying for them, and it would be unjust to permit them to do so in light of the

circumstances in which the benefits were obtained.

109.    In the alternative to count one, Maddix and Wood received benefits from

Oak 44 without paying for them through the transactions described above, and it would

be unjust to permit them to do so in light of the circumstances in which the benefits

were obtained.

110.    Oak 44 was damaged as a direct result, in an amount to be determined,

but well in excess of $100,000.

## COUNT FOUR – AIDING AND ABETTING

111.    Defendants Cayman Lane, Lexington 859, Park 12 Property Management, 5515 Hunt, and 5515 Hunt Club Ln. knew about Maddix and Wood's fraud, breaches of fiduciary duty, and unjust enrichment.

112.    Defendants Cayman Lane, Lexington 859, Park 12 Property Management, 5515 Hunt, and 5515 Hunt Club Ln. consciously gave substantial assistant to Maddix and Wood in their commission of their offenses.

113.    Defendants Cayman Lane, Lexington 859, Park 12 Property Management, 5515 Hunt, and 5515 Hunt Club Ln. actually benefitted from Maddix and Wood's offenses against Oak 44.

114.    Defendants Cayman Lane, Lexington 859, Park 12 Property Management, 5515 Hunt, and 5515 Hunt Club Ln. have aided and abetted Maddix and Wood, and therefore are jointly liable for all damages (including any and all punitive damages and attorney's fees).

## COUNT FIVE – CIVIL CONSPIRACY

115.    Defendants Cayman Lane, Lexington 859, Park 12 Property Management, 5515 Hunt, and 5515 Hunt Club Ln. acted in concert with Maddix and Wood's tortious acts.

116.    Defendants Cayman Lane, Lexington 859, Park 12 Property Management, 5515 Hunt, and 5515 Hunt Club Ln. knew that Maddix and Wood's actions breached duties owed to Oak 44, but participated in the actions anyway, for their own benefit.

117.    Defendants Cayman Lane, Lexington 859, Park 12 Property Management, 5515 Hunt, and 5515 Hunt Club Ln. have civilly conspired with Maddix and Wood, and therefore are jointly liable for all damages (including any and all attorney's fees).

WHEREUPON, having fully pleaded, Oak 44 prays for: (1) a monetary judgment in its favor against all the defendants, jointly and severally, in an amount to be determined at trial, but in excess of $75,000 in compensatory damages, plus punitive damages and attorney's fees under Kentucky law; (2) for the imposition of an equitable lien, a materialman's lien, a constructive trust, or other similar interest over or in all property owned by Cayman Lane LLC, including in particular the home at 3660 Cayman Lane, Lexington, Fayette County, Kentucky; and (3) for such other relief as to which it is entitled under the law.

Respectfully submitted,

 /s/ Joshua M. Smith
Joshua M. Smith (098835)
Jeffrey M. Nye (pro hac vice forthcoming)
Adam P. Stickney (pro hac vice forthcoming)
STAGNARO, SABA &
PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-6715
(513) 533-2999 (fax)

jms@sspfirm.com
jmn@sspfirm.com
aps@sspfirm.com