IN THE U.S. DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | | |
|---|---|---|
| Oak 44 Property Management, LLC | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | |
| | ) | C.A. No. 5:24-CV-00063-KKC |
| Justin Maddix, | ) | |
| Stephen Wood, | ) | |
| Lexington 859 Service, LLC, | ) | |
| Cayman Lane, LLC, | ) | |
| Park 12 Property Management LLC, | ) | |
| 5515, LLC, and | ) | |
| 5515 Hunt Club Ln LLC | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

**DEFENDANT'S, JUSTIN MADDIX, ANSWER TO
PLAINTIFF'S COMPLAINT AND COUNTERCLAIM**

COMES NOW, the Defendant, Justin Maddix (hereinafter referred to as "Defendant"), by and through counsel Smith, O'Toole, & Brooke, and hereby provides the following Answer and Counterclaims to Plaintiff's Complaint as follows:

**FIRST DEFENSE**

1. Estoppel – Plaintiff's claims may be barred in whole or in part by the affirmative defense of failure to state a claim as Plaintiff's Complaint fails to state a claim upon which relief can be granted.

**SECOND DEFENSE**

2. Offset - Defendant contends that any recovery by the Plaintiff be offset by the amount owed to the Defendant as a result of Plaintiff's actions.

## THIRD DEFENSE

3. First Breach – Plaintiff's claims may be barred in whole or in part by the affirmative defense of first breach as Plaintiff was the first party to commit a breach of the Contract.

## FOURTH DEFENSE

4. Release/Waiver – Plaintiff's claims may be barred in whole or in part by the affirmative defenses of release or waiver as Plaintiff released and/or waived its claims against Defendant for any obligations under the alleged Contract by failing to finish the terms required under the Contract.

## FIFTH DEFENSE

5. Anticipatory Repudiation – Plaintiff's claims may be barred in whole or in part by the affirmative defense of anticipatory repudiation as Plaintiffs repudiated the Contract by informing the Defendant that he was refusing to complete the contract.

## SIXTH DEFENSE

6. Statute of limitations – Plaintiff's claims may be barred in whole or in part by the applicable statute of limitations.

## SEVENTH DEFENSE

7. Punitive damages – because punitive damages are not available for this claim, said damages are barred.

## EIGHTH DEFENSE

8. All Available Defenses - Plaintiff's claims may be barred in whole or in part by other affirmative defenses and Defendant asserts all the affirmative defenses available to them pursuant to the Kentucky Rules of Civil Procedure 8.03 and 12.02 as if fully set forth herein.

**NINTH DEFENSE**

9.  Defendant admits the allegations contained in paragraphs 4, 6a, 6b, 6c, 7, 9, 10, 47, 50, 51, 52, 72, 75, 81, 82, and 83 of Plaintiff's Complaint.

10. Defendant denies the allegations contained in paragraphs 1, 2, 12, 13, 14, 15, 44, 45, 46, 57, 79, 80, 84, 85, 86, 87, 88, 89, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 110, 111, 112, 113, 114, 115, 116, and 117 of Plaintiff's Complaint.

11. Defendant does not possess the requisite information to respond to the allegations contained in paragraphs 5, 6d, 6e, 8, 16, 61, 67, 69, 70, 71, 74, 78, 90, 91, and 109 of Plaintiff's Complaint and therefore they are denied.

12. The allegations in paragraphs 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 48, and 49 of Plaintiff's Complaint are inapplicable to Defendant because Defendant has no interest, legal, or financial ties to the Cayman Lane Property but, out of an abundance of caution, the allegations are denied.

13. The allegations in paragraph 53, 54, 55, 58, 59, 60, 62, 63, 64, 65, 66, 68, 73, 76, and 77 of Plaintiff's Complaint are inapplicable to Defendant but, out of an abundance of caution, the allegations are denied.

14. Defendant admits in part and denies in part the allegations contained in paragraph 3 of Plaintiff's Complaint because while Plaintiff did establish Oak 44 as a Wyoming limited liability company, Defendant denies that it is still active as it was dissolved on October 9, 2021.

15. Defendant admits in part and denies in part the allegations contained in paragraph 11 of Plaintiff's Complaint because while Defendant was a supervisory employee, he denies

using Oak 44's credit accounts. Oak 44 did not have credit accounts with Lowes or Home Depot as this was a personal account held by Justin Maddix.

16. Defendant admits in part and denies in part the allegations contained in paragraph 56 of Plaintiff's Complaint. Defendant admits that his phone number was linked to Oak 44's invoices because Defendant's Home Depot Account was used for Oak 44's property purchases so anytime there was a purchase for items from employees/vendors for Oak 44 properties the purchase defaulted to "Sold to Justin Maddix," but Defendant denies that he purchased these items for himself.

17. Defendant denies each and every remaining allegation of Plaintiff's Complaint not specifically admitted herein.

## Counterclaim of Defendant Against Plaintiff

Defendant, Justin Maddix, (hereinafter "Defendant"), by and through counsel, Smith O'Toole and Brooke in support of his Counterclaim against Plaintiff, Oak 44 Property Management, LLC (hereinafter "Plaintiff" or "Oak 44"), states the following:

## Factual Allegations

18. Oak 44 Property Management Company was formed on or about August 21, 2020.

19. Oak 44 is a Wyoming limited liability company whose sole member is John Gaston.

20. Oak 44 owns and manages Twenty-Two Twenty Apartments, The Crossing Apartments, and 1901 Apartments. Oak 44 did not own Ironwood & Eric Ct Apartments; however, Oak 44 solely managed these.

21. According to the Wyoming Secretary of State, Oak 44 Property Management, LLC was dissolved on or around October 9, 2021.

22. The main reason that Oak 44 was formed was due to a prior poor experience with Alltrade, a property management company previously used by Oak 44.

23. The business mission of Oak 44 is to be an established company with the aim of helping tenants get the properties of their choice and effectively manage and maximize their properties in the Kentucky area.

24. On or around July 20, 2020, Plaintiff hired Defendant, Justin Maddix, to be the third-party property manager/Vice President of Oak 44.

25. Defendant has over ten (14) years of experience successfully overseeing and managing multiple properties. He has also successfully built self-sustaining properties. Plaintiff wanted Defendant to build and operate Oak 44.

26. Defendant has built a skillset that he has used to manage costs, establish strategic relationships with residents, vendors, and service providers. Defendant is extremely well versed in property acquisitions.

27. At the beginning of Defendant's employment with Oak 44, Plaintiff and Defendant agreed that if Defendant would build and operate Oak 44, Defendant would receive equity in Oak 44, which was to also include a sale bonus when the properties eventually sold.

28. Defendant built Plaintiff's business for approximately four (4) years. Plaintiff lived in Arizona and depended on Defendant to oversee the daily operations.

29. The day-to-day operations that Defendant oversaw included, but were not limited to, approving property expenses, managing rent collections through property managers, overseeing occupancy/vacancy, all reports including financial, occupancy, and leasing information, inspecting properties and arranging for repairs as needed, all tenant complaints, rental violations, hiring employees, training employees, overseeing

renovations, and assisting with maintenance. Additionally, Defendant oversaw all unit inspections, budgets, and project renovations. Defendant worked directly with the bank to secure funding for renovations for the rental units. Defendant was also responsible for maintaining an occupancy of 90% of all units and keeping collections down.

30. Defendant had a major part in building Oak 44, as he was the only one in the company with property management experience.  Oak 44 was established in August 2020 and, since this time, Oak 44 has exponentially progressed. Residents now pay their own utility fees. Defendant created all of the templates that Oak 44 uses to communicate with residents. Defendant always kept up with market trends to maximize profitability for Plaintiff. Thus, by staying up to date with market trends, Defendant was able to charge an increase in move-in fees and increased rent.

31. Defendant used his Home Depot and Lowes account so that Oak 44 could purchase items to maintain their properties. The goal of this was to maintain all receipts in a central location and receive discounts on supplies for having a long-term vendor history. This was not a credit account.

32. Due to the accounts belonging to Defendant, anything purchased through these accounts would have been marked "Sold to Justin Maddix," even if he did not physically make the purchase.

33. At times, the company representative that would take an order from Home Depot or Lowes would charge the wrong company. Defendant always communicated this to the representative to reverse the incorrect charge and bill the correct company.

34. Plaintiff currently owes Defendant *at least* $10,517.83 due to Lowes/Home Depot purchases for Oak 44 on Defendant's personal accounts, an amount which is only expected to increase.

35. On or about February 20, 2024, Defendant and Plaintiff engaged in a text conversation regarding Plaintiff and Defendant's working relationship. Plaintiff stopped responding after Defendant asked Plaintiff if their working relationship was still beneficial.

36. On or about February 29, 2024, Defendant emailed Laura Klump, Plaintiff's Director of Accounting, to inquire as to why Defendant's Oak 44 email was not working and if there was any issue. Plaintiff emailed back, apologized, and said he would look into it for Defendant. Defendant then received an email from Laura Klump containing Defendant's login credentials.

37. On or about March 1, 2024, Defendant again emailed Laura Klump to inquire as to why he did not receive pay for the previous two (2) weeks. Defendant was still managing the properties and all of Oak 44's employees.

38. Unbeknownst to Defendant, his official resignation was accepted from Plaintiff via text on February 19, 2024; however, Defendant never stated that he was resigning, but was simply having a conversation with Plaintiff which Plaintiff stopped replying to. The only text conversation regarding Defendant's employment was on February 20, 2024; no such conversation occurred before this date. However, according to Plaintiff, Defendant resigned on February 19, 2024, via text.

39. In an email dated March 1, 2024, Plaintiff requested that Defendant return anything regarding the Oak 44 properties to the 1901 Apartments office.

40. Although Plaintiff considered Defendant's alleged text from February 19, 2024, a "resignation," Plaintiff never formally let Defendant know he was no longer employed with Oak 44.

41. To date, Defendant has not received either equity or a sales bonus as agreed between Plaintiff and Defendant upon Defendant's hiring. Defendant's terms of employment included that Defendant was to receive equity in Oak 44 and was also to receive a bonus when Plaintiff decided to sell the properties.

42. Currently, Plaintiff has under contract to sell Twenty-Two Twenty Apartments and 1901 Apartments, both of which are owned by Oak 44 and Defendant helped to build.

## CLAIMS AGAINST PLAINTIFF

## COUNT I: BREACH OF CONRTACT

43. Defendant incorporates paragraphs 1-42 as though fully restated herein.

44. Defendant and Plaintiff had a contract whereby Defendant agreed to build and manage Oak 44 in exchange for equity and sales bonuses from Defendant.

45. Plaintiff committed the first breach of this contract by failing to provide any equity or sales bonuses to Defendant.

46. Defendant fulfilled his contractual obligations to Plaintiff by building and fully managing Oak 44.

47. Due to Plaintiff's breach of said contract, Defendant has incurred significant damages in lost wages and lost profit.

## COUNT II: UNJUST ENRICHMENT

48. Defendant incorporates by reference paragraphs 1-47 as though fully restated herein.

49. Defendant conferred a benefit upon Plaintiff by building and operating Oak 44, while Plaintiff lived in Arizona.

50. Plaintiff has enjoyed these benefits without providing Defendant equity or bonuses.

51. Therefore, Plaintiff has been unjustly enriched by these benefits and Defendant should be reimbursed for the benefits they conferred on Plaintiff in the amount promised to Defendant.

## COUNT III: PROMISSORY ESTOPPEL

52. Defendant incorporates by reference paragraphs 1-51 as though fully restated herein.

53. Plaintiff made a promise to the Defendant when the parties agreed on the terms of the Contract.

54. The Defendant reasonably relied on Plaintiff's promise.

55. Plaintiff's promise was clear, definite, and unequivocal, and was specifically made to induce Defendant to oversee the operations of Oak 44.

56. Plaintiff's actions caused Defendant to rely on Plaintiff's promise and Defendant worked earnestly for Plaintiff while Plaintiff remained in Arizona.

57. Defendant worked for Plaintiff as a result of his reliance on Plaintiff's promise to receive equity and bonus monies.

58. Plaintiff reasonably expected for Defendant to rely on their promise because there was an agreed upon Contract and Plaintiff accepted work from the Defendant.

59. At the times of making the promise and inducing the action on Defendant's part, Plaintiff could reasonably foresee that their failure to perform pursuant to the promise would cause the Defendant to suffer damages.

60. Due to Defendant's reasonable reliance on Plaintiff's promise, Defendant worked to the high standard pursuant to Plaintiff's mission for Oak 44.

61. Injustice may only be avoided if Defendant is reimbursed for the amount still owed to Defendant due to the Defendant's reasonable reliance on Plaintiff's promise.

## COUNT IV: BREACH OF GOOD FAITH AND FAIR DEALING

62. Defendant incorporates by reference paragraphs 1-61 as though fully restated herein.

63. In every contract, there is an implied covenant of good faith and fair dealing, which enforces the parties' requirement to carry out the contract in good faith. *See Quadrille Business Systems v. Kentucky Cattlemen's Association, Inc.,* 242 S.W.3d 359 (Ky. App. 2007); *Farmers Bank & Tr. Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc.,* 171 S.W.3d 4 (Ky. 2005).

64. Plaintiff breached this implied covenant when Plaintiff failed to provide Defendant with equity, a raise, or bonus monies.

65. Plaintiff's failure to do so hindered Defendants' ability to profit from his effort to build Oak 44.

66. Plaintiff has not operated with good faith and fair dealing because, rather than complete the business deal as contracted, Plaintiff fired Defendant. Defendant never received equity, or bonus monies for his efforts in managing Oak 44.

## COUNT V: FRAUD

67. Defendant incorporates by reference paragraphs 1-66 as though fully restated herein.

68. At the formation of the company on or about August 21, 2020, Plaintiff specifically stated that he would compensate Defendant with sales bonuses and equity in the company for successfully overseeing and managing the day-to-day operations of Oak 44.

69. At the time of Plaintiff making this statement, Plaintiff knew he had no intention of providing Defendant with either equity in the company or any sales bonuses.

70. Plaintiff accepted labor, while Plaintiff knew that he had no intention of providing any equity or bonuses to Defendant.

71. Plaintiff intentionally chose not to provide equity or bonuses to Defendant, despite having already agreed this was a prerequisite to hiring Defendant and accepting Defendant's labor.

72. Plaintiff's conduct amounted to deceit, an intentional misrepresentation, and concealment of material facts.

73. Due to the Plaintiff's fraudulent actions, Defendant has amassed thousands of dollars in damages from lost wages and lost profit as Plaintiff has fraudulently retained all profit of Oak 44 for himself.

74. Due to Plaintiff's perpetration of this fraud, Defendant is entitled to punitive damages.

WHEREFORE, Defendants respectfully demand that Plaintiff's Complaint be dismissed with prejudice, and that Defendants be awarded their attorneys' fees, court costs, punitive damages, and any other relief to which they may be entitled.

Respectfully submitted,

/s/ James O'Toole

Smith, O'Toole, & Brooke
3080 Harrodsburg Rd., Suite 101
Lexington, KY 40503
jotoole@soblawfirm.com