IN THE U.S. DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| OAK 44 PROPERTY MANAGEMENT, LLC ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| V. ) | |
| ) C.A. No. 5:24-CV-00063-KKC | |
| JUSTIN MADDIX, ) | |
| STEPHEN WOOD, ) | |
| LEXINGTON 859 SERVICE, LLC, ) | |
| CAYMAN LANE, LLC, ) | |
| PARK 12 PROPERTY MANAGEMENT LLC ) | |
| 5515, LLC, and ) | |
| 5515 HUNT CLUB LN, LLC ) | |
| ) | |
| DEFENDANTS. ) | |
| ) | |
| AND ) | |
| ) | |
| JUSTIN MADDIX ) | |
| ) | |
| COUNTER-PLAINTIFF AND ) | |
| THIRD PARTY PLAINTIFF ) | |
| V. ) | |
| ) | |
| OAK 44 PROPERTY MANAGEMENT, LLC ) | |
| ) | |
| COUNTER-DEFENDANT ) | |
| ) | |
| AND ) | |
| ) | |
| JOHN GASTON ) | |
| ) | |
| THIRD-PARTY DEFENDANT ) | |

**<u>JUSTIN MADDIX  FIRST AMENDED AND LEXINGTON 859 SERVICE, LLC
INITIAL  ANSWER TO PLAINTIFF'S COMPLAINT
AND
COUNTERCLAIMS AS TO OAK 44 PROPERTY MANAGEMENT, LLC AND
JUSTIN MADDIX'S THIRD PARTY CLAIMS AS TO JOHN GASTON
WITH JURY DEMAND</u>**

COMES NOW, the Defendant, Justin Maddix and Lexington 859 Service, LLC (hereinafter referred to as "Defendants" or "Defendant"), by and through counsel Smith, O'Toole, & Brooke, with the permission of Plaintiff, Oak 44 Property Management, LLC's counsel, and hereby provides the following First Amended Answer and Counterclaims to Plaintiff's Complaint by Justin Maddix and First Answer of Defendant Lexington 859 Service, LLC as follows:

## JURY DEMAND

Defendant Justin Maddix hereby demands a trial by a jury of his peers.

## AFFIRMATIVE DEFENSES

For their affirmative defenses, Defendants assert the following:

## FIRST DEFENSE

1. Failure to State a Claim – Plaintiff's claims may be barred in whole or in part by the affirmative defense of failure to state a claim as Plaintiff's Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

2. Offset - Defendants contends that any recovery by the Plaintiff be offset by the amount owed to the Defendants as a result of Plaintiff's actions.

## THIRD DEFENSE

3. First Breach – Plaintiff's claims may be barred in whole or in part by the affirmative defense of first breach as Plaintiff was the first party to commit a breach of the Contract.

## FOURTH DEFENSE

4. Release/Waiver – Plaintiff's claims may be barred in whole or in part by the affirmative defenses of release or waiver as Plaintiff released and/or waived its claims against

Defendants for any obligations under the alleged Contract by failing to finish the terms required under the Contract.

### FIFTH DEFENSE

5. Anticipatory Repudiation – Plaintiff's claims may be barred in whole or in part by the affirmative defense of anticipatory repudiation as Plaintiffs repudiated the Contract by informing the Defendants that he was refusing to complete the contract.

### SIXTH DEFENSE

6. Statute of limitations – Plaintiff's claims may be barred in whole or in part by the applicable statute of limitations.

### SEVENTH DEFENSE

7. Punitive damages – because punitive damages are not available for this claim, said damages are barred.

### EIGHTH DEFENSE

8. Payment – all money's allegedly taken by Defendants Maddix and/or Lexington 859 Services, LLC were covered by returns or compensatory transactions with the net result that Plaintiffs owe Defendant Maddix at least $10,000.

### NINTH DEFENSE

9. Failure to Plead Fraud with Specificity.  Plaintiff makes general allegations regarding alleged acts of fraud without specifically identifying the acts of Defendants that comprise the claim and therefore do not provide Defendants with sufficient knowledge of the allegations to provide a viable defense.

10. All Available Defenses - Plaintiff's claims may be barred in whole or in part by other affirmative defenses and Defendant asserts all the affirmative defenses available to them pursuant to the Federal Rules of Civil Procedure 8 (c) and 12 (b) as if fully set forth herein.

## **ANSWER TO SPECIFIC ALLEGATIONS**

Defendants make the following responses to the specific allegations contained in Plaintiff's Complaint.

11. Defendant admits the allegations contained in paragraphs 4, 6a, 6b, 6c, 7, 9, 10, 47, 50, 51, 52, 72, 75, 81, 82, and 83 of Plaintiff's Complaint.

12. Defendant denies the allegations contained in paragraphs 1, 2, 12, 13, 14, 15, 44, 45, 46, 57, 79, 80, 84, 85, 86, 87, 88, 89, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 110, 111, 112, 113, 114, 115, 116, and 117 of Plaintiff's Complaint.

13. Defendant does not possess the requisite information to respond to the allegations contained in paragraphs 5, 6d, 6e, 8, 16, 61, 67, 69, 70, 71, 74, 78, 90, 91, and 109 of Plaintiff's Complaint and therefore they are denied.

14. The allegations in paragraphs 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 48, and 49 of Plaintiff's Complaint are inapplicable to Defendant because Defendant has no interest, legal, or financial ties to the Cayman Lane Property, and therefore the allegations as they pertain to the Defendants Justin Maddix and Lexington 859 Service, LLC are hereby denied.

15. The allegations in paragraph 53, 54, 55, 58, 59, 60, 62, 63, 64, 65, 66, 68, 73, 76, and 77 of Plaintiff's Complaint are inapplicable to Defendant, and therefore the allegations as they pertain to Defendants Justin Maddix and Lexington 859 Service, LLC are hereby denied.

16. Defendant admits in part and denies in part the allegations contained in paragraph 3 of Plaintiff's Complaint because while Plaintiff did establish Oak 44 as a Wyoming limited liability company, Defendant denies that it is still active as it was dissolved on October 9, 2021.

17. Defendant admits in part and denies in part the allegations contained in paragraph 11 of Plaintiff's Complaint because while Defendant was a supervisory employee, he denies using Oak 44's credit accounts and the characterization of the accounts as credit accounts. Oak 44 did not have credit accounts with Lowes or Home Depot. There are portals through which vendors and employees can purchase items and materials for properties being worked on for Oak 44. This portal can be linked to credit cards and the portal used was in the name of Justin Maddix, not Oak 44. A comprehensive review of the portals shows that Oak 44 owes Justin Maddix in excess of $10,000 and that all of Plaintiff's claims are uninformed and unfounded.

18. Defendant admits in part and denies in part the allegations contained in paragraph 56 of Plaintiff's Complaint. Defendant admits that his phone number was linked to Oak 44's invoices because Defendant's Home Depot Account was used for Oak 44's property purchases so anytime there was a purchase for items from employees/vendors for Oak 44 properties the purchase defaulted to "Sold to Justin Maddix," but Defendant denies that he purchased these items for himself.

19. Defendant denies every remaining allegation of Plaintiff's Complaint not specifically admitted herein.

**Claim of Defendant, Justin Maddix, Against Plaintiff and Third-Party, John Gaston**

Defendant, Justin Maddix, (hereinafter "Maddix"), by and through counsel, Smith O'Toole and Brooke in support of his Claims against Plaintiff, Oak 44 Property Management, LLC (hereinafter "Oak 44") and Third-Party Defendant, John Gaston, (hereafter "Gaston" and collectively with "Oak 44" referred to as "Counter-Defendants") states the following:

**Factual Allegations**

20. John Gaston is a resident of Arizona and the principal of Oak 44 Property Management Company.

21. Oak 44 Property Management Company was formed on or about August 21, 2020.

22. Oak 44 is a Wyoming limited liability company whose sole member is John Gaston.

23. Oak 44 owns and manages Twenty-Two Twenty Apartments, The Crossing Apartments, and 1901 Apartments. Oak 44 did not own Ironwood & Eric Ct Apartments; however, Oak 44 solely managed these.

24. According to the Wyoming Secretary of State, Oak 44 Property Management, LLC was dissolved on or around October 9, 2021.

25. The main reason that Oak 44 was formed was due to a prior poor experience with Alltrade, a property management company previously used by Oak 44.

26. The business mission of Oak 44 is to be an established company with the aim of helping tenants get the properties of their choice and effectively manage and maximize their properties in the Kentucky area.

27. On or around July 20, 2020, Gaston hired Defendant, Justin Maddix, ("Maddix") to be the third-party property manager/Vice President of Oak 44.

28. Maddix has fourteen (14) years of experience successfully overseeing and managing multiple properties. He has also successfully built self-sustaining properties. Gaston wanted Maddix to build and operate Oak 44.

29. Maddix has built a skillset that he has used to manage costs, establish strategic relationships with residents, vendors, and service providers. Maddix is extremely well versed in property acquisitions.

30. At the beginning of Maddix's employment with Oak 44, Gaston and Maddix agreed that if Maddix would build and operate Oak 44, Gaston would compensate Maddix with equity in Oak 44, and Maddix would receive a sale bonus when the properties eventually sold.

31. Maddix relied upon Gaston's representations and put forth his best efforts to grow and build Oak 44.

32. Maddix's efforts to build Oak 44 were very successful.

33. Oak 44's value grew significantly under Maddix's management.

34. Maddix built Oak 44 for approximately four (4) years. Gaston lived in Arizona and depended on Maddix to oversee the daily operations.

35. The day-to-day operations that Maddix oversaw included, but were not limited to, approving property expenses, managing rent collections through property managers, overseeing occupancy/vacancy, all reports including financial, occupancy, and leasing information, inspecting properties and arranging for repairs as needed, all tenant complaints, rental violations, hiring employees, training employees, overseeing renovations, and assisting with maintenance. Additionally, Maddix oversaw all unit inspections, budgets, and project renovations. Maddix worked directly with the bank to

secure funding for renovations for the rental units. Maddix was also responsible for maintaining an occupancy of 90% of all units and keeping collections down.

36. Maddix had a major part in building Oak 44, as he was the only one in the company with property management experience. Oak 44 was established in August 2020 and, since this time, Oak 44 has exponentially progressed. Residents now pay their own utility fees. Maddix created all of the templates that Oak 44 uses to communicate with residents. Maddix always kept up with market trends to maximize profitability for Oak 44. Thus, by staying up to date with market trends, Maddix was able to charge an increase in move-in fees and increased rent.

37. Maddix used his Home Depot and Lowes account so that Oak 44 could purchase items to maintain their properties. The goal of this was to maintain all receipts in a central location and receive discounts on supplies for having a long-term vendor history. This was not a credit account.

38. Due to the accounts belonging to Maddix, anything purchased through these accounts would have been marked "Sold to Justin Maddix," even if he did not physically make the purchase.

39. At times, the company representative that would take an order from Home Depot or Lowes would charge the wrong company. Maddix always communicated this to the representative to reverse the incorrect charge and bill the correct company.

40. Oak 44 currently owes Maddix *at least* $10,517.83 due to Lowes/Home Depot purchases for Oak 44 on Maddix's personal accounts, an amount which is only expected to increase.

41. On or about February 20, 2024, Maddix and Gaston engaged in a text conversation regarding Gaston and Maddix's working relationship. Gaston stopped responding after Maddix asked Gaston if their working relationship was still beneficial.

42. On or about February 29, 2024, Maddix emailed Laura Klump, Oak 44's Director of Accounting, to inquire as to why Maddix's Oak 44 email was not working and if there was any issue. Gaston emailed back, apologized, and said he would look into it for Maddix. Maddix then received an email from Laura Klump containing Maddix's login credentials.

43. On or about March 1, 2024, Maddix again emailed Laura Klump to inquire as to why he did not receive pay for the previous two (2) weeks. Maddix was still managing the properties and all of Oak 44's employees.

44. Unbeknownst to Maddix, his official resignation was accepted from Oak 44 via text on February 19, 2024; however, Maddix never stated that he was resigning, but was simply having a conversation with Gaston which Gaston stopped replying to. The only text conversation regarding Maddix's employment was on February 20, 2024; no such conversation occurred before this date. However, according to Counter-Defendants, Maddix resigned on February 19, 2024, via text.

45. In an email dated March 1, 2024, Counter-Defendants requested that Maddix return anything regarding the Oak 44 properties to the 1901 Apartments office.

46. Although Counter-Defendants considered Maddix's alleged text from February 19, 2024, a "resignation," Counter-Defendants never formally let Maddix know he was no longer employed with Oak 44.

47. To date, Maddix has not received either equity or a sales bonus as agreed between Gaston and Maddix upon Maddix's hiring. Maddix's terms of employment included that Maddix

was to receive equity in Oak 44 and was also to receive a bonus when Counter-Defendants decided to sell the properties.

48. Currently, Oak 44 is under contract to sell Twenty-Two Twenty Apartments and 1901 Apartments, both of which are owned by Oak 44 and Maddix helped to build.

## CLAIMS AGAINST COUNTER-DEFENDANTS

## COUNT I: BREACH OF CONRTACT

49. Maddix incorporates paragraphs 20-48 as though fully restated herein.

50. Maddix and Gaston had a contract whereby Maddix agreed to build and manage Oak 44 in exchange for equity from Gaston and sales bonuses from Oak 44.

51. Counter-Defendants committed the first breach of this contract by failing to provide any equity or sales bonuses to Maddix.

52. Maddix fulfilled his contractual obligations to Counter-Defendants by building and fully managing Oak 44.

53. Due to Counter-Defendant's breach of said contract, Maddix has incurred significant damages in lost wages, sales bonuses, and lost equity value.

## COUNT II: UNJUST ENRICHMENT

54. Maddix incorporates by reference paragraphs 20-53 as though fully restated herein.

55. Maddix conferred a benefit upon Gaston by building and operating Oak 44, while Gaston lived in Arizona.

56. Counter-Defendants have enjoyed these benefits without providing Maddix equity or bonuses.

57. Therefore, Counter-Defendants have been unjustly enriched by these benefits and Maddix should be reimbursed for the benefits they conferred on Counter-Defendants in the amount

Maddix's expertise, skill, and dedication benefited Counter-Defendants through increased value in Oak 44.

### COUNT III: PROMISSORY ESTOPPEL

58. Maddix incorporates by reference paragraphs 20-57 as though fully restated herein.

59. Counter-Defendants made a promise to the Maddix when the parties agreed on the terms of the Contract.

60. The Maddix reasonably relied on Counter-Defendants' promise.

61. Counter-Defendants' promise was clear, definite, and unequivocal, and was specifically made to induce Maddix to oversee the operations of Oak 44.

62. Counter-Defendants' actions caused Maddix to rely on Counter-Defendants' promise and Maddix worked earnestly for Counter-Defendants while Gaston remained in Arizona.

63. Maddix worked and performed above and beyond the call for Counter-Defendants as a result of his reliance on Gaston's promise to receive equity and bonus monies.

64. Counter-Defendants reasonably expected for Maddix to rely on their promise because there was an agreed upon Contract and Counter-Defendants accepted work from Maddix.

65. At the time of making the promise and inducing the action on Maddix's part, Counter-Defendants could reasonably foresee that their failure to perform pursuant to the promise would cause the Maddix to suffer damages.

66. Due to Maddix's reasonable reliance on Counter-Defendants' promise, Maddix worked to the high standard pursuant to Gaston's mission for Oak 44.

67. Injustice may only be avoided if Maddix is reimbursed for the amount still owed to Maddix due to the Maddix's reasonable reliance on Counter-Defendants' promise.

## COUNT IV: BREACH OF GOOD FAITH AND FAIR DEALING

68. Maddix incorporates by reference paragraphs 20-67 as though fully restated herein.

69. In every contract, there is an implied covenant of good faith and fair dealing, which enforces the parties' requirement to carry out the contract in good faith. *See Quadrille Business Systems v. Kentucky Cattlemen's Association, Inc.,* 242 S.W.3d 359 (Ky. App. 2007); *Farmers Bank & Tr. Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc.,* 171 S.W.3d 4 (Ky. 2005).

70. Counter-Defendants breached this implied covenant when Counter-Defendants failed to provide Maddix with equity, a raise, or bonus monies.

71. Counter-Defendants' failure to do so hindered Maddix's ability to receive the promised compensation from his effort to build Oak 44.

72. Counter-Defendants have not operated with good faith and fair dealing because, rather than complete the business deal as contracted, Counter-Defendants fired Maddix. Maddix never received equity, or bonus monies for his efforts in managing Oak 44.

73. Maddix has suffered significant financial damages as a direct and proximate result Counter-Defendants' breach of the covenant of good faith and fair dealing.

## COUNT V: FRAUD

74. Maddix incorporates by reference paragraphs 20-73 as though fully restated herein.

75. At the formation of the company on or about August 21, 2020, Gaston specifically stated that Maddix's compensation would include sales bonuses and equity in the company for successfully overseeing and managing the day-to-day operations of Oak 44.

76. At the time of Gaston making this statement, Gaston knew he had no intention of providing Maddix with either equity in the company or any sales bonuses.

77. Gaston accepted labor, while Counter-Defendants had no intention of providing any equity or bonuses to Maddix.

78. Counter-Defendants intentionally chose not to provide equity or bonuses to Maddix, despite having already agreed this was a prerequisite to hiring Maddix and accepting Maddix's labor.

79. Counter-Defendants' conduct amounted to deceit, an intentional misrepresentation, and concealment of material facts.

80. Due to the Counter-Defendants' fraudulent actions, Maddix has amassed thousands of dollars in damages from lost wages and lost profit as Gaston has fraudulently retained all profit of Oak 44 for himself.

81. As a direct and proximate result of Counter-Defendants fraud, Maddix has suffered humiliation, anguish, embarrassment, financial, and emotional damages.

## COUNT VI: DEFAMATION

82. Maddix incorporates paragraphs 20-81 as though fully restated herein.

83. Gaston made knowingly false allegations regarding Maddix to a reporter for Kentucky.com.

84. Gaston knew or should have known that many of the statements made to the reporter and included in the news article in the Lexington Herald and online at Kentucky.com were false when he made them.

85. Gaston accused Maddix of committing fraud and theft when the same were completely untrue.

86. Gaston's comments were published to third parties through the newspaper article and online.

87. Gaston's false allegations have harmed Maddix's reputation in the community.

88. Gaston's false allegations are Defamation Per Se under Kentucky law.

89. Maddix has lost business opportunities and income as a direct and proximate result of Gaston's defamatory statements.

90. As a direct and proximate result of Counter-Defendants defamatory actions, Maddix has suffered humiliation, anguish, embarrassment, financial and emotional damages.

## COUNT VII: ABUSE OF PROCESS

91. Maddix incorporates paragraphs 20-90 as though fully restated herein.

92. Counter-Defendants filed suit intending to destroy Maddix's reputation and to deprive Maddix of compensation due to him, and for no other lawful reason.

93. The judicial process is not intended to be used for the destruction of a person's reputation.

94. The judicial process is not intended to be used as a means of thwarting compensation due to a person.

95. Counter Defendants willfully instituted this lawsuit for the unlawful purpose of destroying Maddix's reputation and in an attempt to avoid compensating Maddix for compensation due to him.

96. Maddix has lost compensation due to him and had his personal and professional reputation severely damaged by Counter-Defendants' actions.

97. Counter-Defendants re using this lawsuit as a means of oppression intended to subject Maddix to cruel and unjust hardship.

98. As a direct and proximate result of Counter-Defendants abuse of process, Maddix has suffered humiliation, anguish, embarrassment, and emotional damages.

WHEREFORE, Defendants and Counter-Plaintiff Maddix, respectfully demand:

A. That Plaintiff's Complaint be dismissed with prejudice.

B. That judgment be entered against Gaston and Plaintiff in an amount sufficient to compensate Maddix for the increased value of Oak 44 as a direct result of Maddix's efforts, skill, and dedication.

C. That this honorable Court award Maddix damages caused by Gaston's fraudulent actions including compensatory and punitive damages.

D. That this honorable Court award Maddix compensatory, punitive, reputational, and emotional damages caused by Gaston's defamatory statements made to the reporter for the Lexington Herald and published online at Kentucky.com.

E. That this honorable Court award Maddix compensation for the humiliation, anguish, embarrassment, financial and emotional damages that he has incurred as a direct and proximate result of Gaston and Oak 44's tortious actions.

F. That Defendants be awarded their attorneys' fees, court costs, punitive damages, and any other relief to which they may be entitled.

Respectfully submitted,

/s/ James O'Toole
Smith, O'Toole, & Brooke
3080 Harrodsburg Rd., Suite 101
Lexington, KY 40503
jotoole@soblawfirm.com