# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION AT LEXINGTON

Oak 44 Property Management, LLC

    Plaintiff

v.

Justin Maddix, et al.

    Defendants.

**Case no. 5:24-cv-0063**

**Judge Caldwell**

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS (DOC. 48)**

The motion to dismiss should be denied. Even though the motion is docketed as one to dismiss for lack of subject-matter jurisdiction, it does not actually address subject-matter jurisdiction at all. In reality the motion is about capacity to sue, which is not a jurisdictional issue. The Court does have subject-matter jurisdiction, and the plaintiff does have capacity to sue, so the motion should be denied.

After the "Background" section, the supporting brief begins with a section captioned "Legal Standard," which contains multiple incorrect statements of law. This brief will address those later as necessary.

The argument itself is very short; it begins at the bottom of page 6 (out of 9) with the section titled "Oak 44 cannot maintain an action within the Commonwealth of Kentucky." The thesis is that Oak 44 is a "foreign entity" that was "administratively dissolved" by the Wyoming Secretary of State, and that it does not have (and, thanks to the administrative dissolution, cannot now acquire) a "certificate of authority" from the *Kentucky* Secretary of State. According to the movants, the absence of a certificate of

authority means that the plaintiff lacks capacity to sue under Rule 17 and that this action is barred by KRS §14A.9-020(1). The motion then asserts that the complaint should be dismissed for lack of subject matter jurisdiction.[1]

### 1. Capacity to sue and certificates of authority are not jurisdictional issues.

Any capacity or certificate-of-authority problems do not affect the Court's subject matter jurisdiction. (The movants cite no cases holding that they do.)

The Court's subject-matter jurisdiction is established by Article III of the United States Constitution and 28 USC §1332. The motion concedes that Oak 44 and its sole member (John Gaston) are citizens of Arizona, *see* doc. 48-1 at PAGEID # 485, and thus fully diverse from all defendants, and concedes that the complaint alleges that the amount in controversy requirement is satisfied, *see* doc. 48-1 at PAGEID # 481. The motion offers no argument (let alone evidence) to controvert either of these allegations.

The Court therefore has subject-matter jurisdiction over this dispute.

The motion actually only raises questions about capacity or whether the plaintiff has a certificate of authority.

### 2. The remedy for a capacity problem or a "certificate of authority" problem is not dismissal.

Capacity to sue and certificate of authority issues are governed by Civil Rule 17 and Kentucky law. Under both of those, the remedy for running afoul of them would

---

[1] The motion also states, perfunctorily, that the "Complaint should be dismissed . . . for failure to state a claim." *See* doc. 48-1 at PAGEID # 487. There is no argument or explanation for why the complaint should be dismissed under Rule 12(b)(6), so that issue is waived.

not be dismissal—it would be to allow time to fix the problem, either through joinder, ratification, assignment, or a similar mechanism.

Rule 17(a)(3) explicitly says that dismissal is not the remedy: "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."

The movants may argue that the plaintiff has a Rule 17*(b)* problem to which Rule 17*(a)* does not apply; they likely would say that Rule 17*(b)* turns on questions of Kentucky state law, and in particular on KRS §14A.9-020.

But the proper remedy under that Kentucky statute is not dismissal, either. The movants omitted the relevant subsection of the statute from their motion. KRS §14A.9-020(3) sets forth precisely the same ratification rule as Civil Rule 17(a): "A court may stay a proceeding commenced by a foreign entity, its successor, or assignee until it determines whether the foreign entity, its successor, or assignee requires a certificate of authority. If it so determines, the court may further stay the proceeding until the foreign entity, its successor, or assignee obtains the certificate."

The Sixth Circuit has endorsed the view that this statute (which was previously codified at a different section number) means exactly what it says. *See Alliant Credit Tax Fund 31-A, Ltd. v. Murphy*, 494 Fed. Appx. 561, 568 (CA6 2012). Describing a ruling from

this very district court and this case's assigned judge, the Court of Appeals said that the district court had concluded "that even if [the plaintiff] was in violation of the [certificate of authority] statute, the remedy was merely to stay trial until it obtained the certificate." *Id.* at 568. The appellate court affirmed. *Id. See also id.* at n. 7 (collecting citations to other laws similar to KRS 14A.9-020, including one calling a certificate of authority a "non-jurisdictional defect"). *See also Abbott v. Southern Subaru Star, Inc.*, 574 S.W.2d 684, 687 (Ky. App. 1978) (construing an earlier similar statute: "KRS 271A.610 provides that any foreign corporation that fails to qualify to do business in this jurisdiction shall be denied the privilege of maintaining any action, suit or proceeding in any court of this state. Nothing contained in KRS 271A.610 deals with jurisdiction . . . .").

Under Kentucky law, a plaintiff who has a Rule 17(b) or certificate of authority problem can cure that problem by obtaining a certificate, or by *its successor* obtaining a certificate, or by its *assignee* obtaining a certificate. As discussed below, that has happened here.

### 3. An administratively dissolved entity is entitled to assign its rights and assets to a new entity—even after the period of reinstatement has expired.

The movants are correct that Oak 44 (a Wyoming limited liability company) was administratively dissolved by the Wyoming Secretary of State, and the movants are also that the administrative dissolution happened long enough ago that it is not possible to reinstate the original entity. (While the unauthenticated documents attached to the

motion are insufficient to carry the movants' burden, Oak 44 admits has no desire to cause delay by putting form over substance; they are authentic.)

The movants are *not* correct that this is fatal to any claim, much less that it requires dismissal of the complaint. A dissolution is not an immediate cessation of all activities. As part of its "winding up," a dissolved entity is permitted to initiate and maintain litigation, to transfer its assets, and to take other actions to protect its interest and maximize its value.

The text of Wyoming's "winding up" statute provides that a defunct entity is still permitted to initiate litigation like this case. Under Wyoming law, a dissolved entity "shall wind up its activities." Wyo. Stat. §17-29-702(a). "In winding up its activities, a limited liability company . . . [m]ay" do any or all of the following: "Preserve the company activities and property as a going concern for a reasonable time," "Prosecute and defend actions and proceedings, whether civil, criminal or administrative," "Transfer the company's property," "Settle disputes by mediation or arbitration," and "Perform other acts necessary or appropriate to the winding up." Wyo. Stat. §17-29-702(b)(ii)(B), (C), (D), (E), and (G).

The Wyoming Supreme Court has explained that the powers to operate, litigate and compromise, transfer assets, and perform other necessary or appropriate tasks, includes the ability to do those things *even after the reinstatement period has expired* following administrative dissolution. In particular, an administratively dissolved entity

5

is even entitled to assign its assets to a new entity with the exact same name, and the new entity (now in good standing) can proceed as the successor to the defunct entity.

The case is *Prancing Antelope I, LLC v. Saratoga Inn Overlook*, 478 P.3d 1171 (2021). Saratoga Inn was a homeowners association (the Wyoming Supreme Court calls it "HOA1") that was formed by Cynthia Bloomquist in 2007. *Id.* at ¶5. "Beginning in December 2010 and thereafter, HOA1 failed to file annual reports with the Wyoming Secretary of State. In 2012, HOA1 was administratively dissolved for failure to pay state corporate taxes. Three years later, in 2015, Ms. Bloomquist attempted to reinstate HOA1, but the statutory time for reinstatement had passed." *Id.* at ¶10.

To solve this problem, Bloomquist in 2016 simply formed a new entity "with the same name, articles of incorporation, bylaws, and covenants as HOA1." *Id.* (The Wyoming Supreme Court calls this "HOA2".) Later that year HOA2 elected new officers that did not include Bloomquist. *Id.* at ¶12.

The next year, a dispute arose regarding the ownership of a certain piece of real estate ("Lot 1"). In essence, Prancing Antelope claimed to have taken title to Lot 1 from HOA1—but claimed to have done so *after* HOA2 was formed. Prancing Antelope and HOA2 litigated the question of who owned and was entitled to possess Lot 1. *Id.* at ¶13-15. The Wyoming Supreme Court framed the relevant question as: "Is HOA2 a successor to HOA1?" If the answer was yes, then HOA2 was the rightful owner of Lot 1, and Prancing Antelope was not. *Id.* at ¶31-36.

The court held that the answer to that question turned on whether there was an assignment from HOA1 to HOA2. Citing a line of Missouri cases as "persuasive," *id.* at ¶34-36, the court concluded that a mere overlap in name and similarity in organizing documents was not enough—there must also be an *assignment* from the defunct entity to the new entity. "Where an assignment took place . . . the second [entity] was a successor." *Id.* at ¶36. Any of an express assignment, an equitable assignment, or an assignment by estoppel would be sufficient. *Id.* The court ultimately concluded that HOA1 had made an equitable assignment to HOA2, and that HOA2 was therefore the owner of Lot 1 (and was correctly awarded summary judgment). *Id.* at ¶42-46.

Even though the original Oak 44 was administratively dissolved, it has expressly assigned all its assets (including its rights in and to the claims in this litigation) to a new entity with the same name.

### 4.   Oak 44 has assigned its claims to a new entity with the same name.

This brief is supported by two attached declarations, one of counsel and one of John Gaston. Gaston (a citizen and resident of Arizona) is the sole member of Oak 44. *See* Gaston Decl. (attached) at ¶2-4.

Gaston avers that following the administrative dissolution (and impossibility of reinstatement) of the original Oak 44, he has created a new Wyoming limited liability company with the same name ("Oak 44 Property Management, LLC"). *See* Gaston Decl. at ¶4. He avers that all claims of the old Oak 44 have been expressly assigned to the new

Oak 44. *Id.* at ¶5-6. Gaston further avers that—for avoidance of doubt—he has also assigned any claims that *he* has or may have personally in this litigation to the new Oak 44. *Id.* at ¶8. Copies of the resolution of the original Oak 44, the resolution of the new Oak 44, and both express assignment and assumption agreements are attached to that declaration. *Id.* at ¶5-8 and Ex. 1-3.

The declaration of counsel provides a copy of the "new" Oak 44's articles and certificate of organization from the Wyoming Secretary of State. *See* Nye Decl. (attached) at ¶2 and Ex. 1,

This express assignment satisfies the requirement established by the Wyoming Supreme Court in *Prancing Antelope*. As a matter of law, the new Oak 44 entity is the legal successor to the old, defunct, administratively dissolved Oak 44.

**5. Oak 44 (and Gaston) have ratified the litigation, and the new Oak 44 has obtained its certificate of authority.**

As discussed above, Civil Rule 17 provides that an action instituted contrary to its text should not be dismissed, but instead can be "ratified" and allowed to continue, and upon ratification "the action proceeds as if it had been originally commenced by the real party in interest." Civ.R. 17(a)(3). In other words, a ratification relates back to the original filing.

"A proper ratification under Rule 17(a) requires that the ratifying party (1) authorize continuation of the action and (2) agree to be bound by its result." *Icon Group, Inc. v. Mahogany Run Dev. Corp.*, 829 F.3d 473, 478 (CA3 1987),

In addition to expressly assigning any rights from the old Oak 44 to the new Oak 44, Gaston's declaration explains that both he and the old Oak 44 have ratified the action.

> 9. Both the assignment and assumption agreement executed by the LLCs, and the agreement executed by me individually, are intended to (and expressly state) that they are executed in part for the purpose of ratifying the conduct of the Maddix Litigation to date, state that they authorize the continuation of the Maddix Litigation, and state that both Old Company and myself individually agree to be bound by its result.

Gaston Decl. at ¶9. *See also id.* at Ex. 1-3.

In order to avoid any doubt, Gaston also avers directly in the sworn text of his declaration that he (both individually and as the sole member of Oak 44) is ratifying the litigation, authorizing its continuance, and agreeing to be bound by its result. *Id.* at ¶10.

Both Oak 44 and Gaston individually have therefore ratified the litigation, and Rule 17's requirements are satisfied.

The Kentucky statute provides effectively the same rule as Civil Rule 17, by stating that an action may be stayed (not dismissed) "until the foreign entity, *its successor, or assignee* obtains the certificate" of authority. KRS §14A.09-020(3). By this express text, the original Oak 44 does not need the certificate; its successor or assignee can obtain the certificate.

The new Oak 44—the successor of the original, defunct Oak 44—has been registered in Kentucky, and has obtained a certificate of authority. *See* Nye Decl. at ¶3

and Ex. 2. The action can therefore proceed under Kentucky law as well, and the motion to dismiss must be denied.

### 6. There is no argument that the complaint fails to allege facts which could plausibly entitle the plaintiff to relief.

While the motion twice says that that the complaint should be dismissed for failure to state a claim upon which relief can be granted, there is no argument about how or why the complaint fails to allege facts which, if proven true, nevertheless fail to establish a right to relief—which is the standard for a motion to dismiss for failure to state a claim. Simply reciting language from Rule 12 is not sufficient to support a motion or obtain relief; the failure to argue that point substantively is a forfeiture or waiver of the argument. *See, e.g., Flexiworld Technologies, Inc. v. Lexmark Int'l., Inc.*, 2023 U.S. Dist. LEXIS 46267, at *12-13 (E.D.Ky. no. 5:22-97-KKC, Mar. 20, 2023) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").

Because the movants have waived any argument under Rule 12(b)(6), that aspect of the motion must be denied.

### 7. The lis pendens issue is briefed in other filings.

Finally, the motion concludes with a single paragraph referring to the previously briefed question of whether lis pendens is appropriate here. Because the motion makes no new argument, this brief will not unnecessarily duplicate the arguments made in

Oak 44's prior filing on the subject (doc. 24)—but will reiterate that the movants have again essentially sought summary judgment on this issue. The Court cannot, of course, grant summary judgment on a motion to dismiss.

Rule 12(d) theoretically permits the Court to treat the motion to dismiss as one for summary judgment, upon notice and opportunity to present evidence. But the Court should not do that here because conversion would be futile. The motion is not supported as provided for in Rule 56(c), because it does not rely on or incorporate any declarations, affidavits, or other "facts that would be admissible in evidence," Civ.R. 56(d)(4). "Briefs are not evidence." *Bormuth v. County of Jackson*, 870 F.3d 494, 523 (CA6 2017) (Sutton, J., concurring). *See also, e.g., Samples v. Payne*, 2019 U.S. Dist. LEXIS 125483, at *5 (E.D. Ky. no. 6:18-cv-111, July 29, 2019) ("A party's briefs or statements of counsel are not evidence."), *Bennett v. Louisville Metro Gov't*, 616 Fed. Appx. 820, 823 (CA6 2015).

Alternatively, if the Court is inclined to treat the motion as one for summary judgment, it should hold it in abeyance, given that the Court has ordered that no discovery is yet to be done. *See* doc. 52.

## <u>CONCLUSION</u>

The Court has subject matter jurisdiction over this action.

The true argument of the motion is that the plaintiff has a capacity or certificate-of-authority problem. The remedy for such problems is not to dismiss the action. It is to

allow the plaintiff to cure any problems through ratification or other similar action. The

plaintiff here has cured any such problems, and so the motion must be denied.

Respectfully submitted,

 /s/ Joshua M. Smith
Joshua M. Smith
Jeffrey M. Nye
Bailey E. Sharpe
STAGNARO, SABA &
PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-6715
(513) 533-2999 (fax)
jms@sspfirm.com
jmn@sspfirm.com
bes@sspfirm.com

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing was served by cm/ecf on all
counsel of record.

 /s/ Joshua M. Smith
Joshua M. Smith