UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | | |
|---|---|---|
| OAK 44 PROPERTY MANAGEMENT, LLC | ) ) ) | PLAINTIFF |
| vs. | ) ) | Case No. 5:24-cv-00063 |
| STEPHEN WOOD; LEXINGTON 859 SERVICE, LLC; CAYMAN LANE, LLC; PARK 12 PROPERTY MANAGEMENT LLC; 5515, LLC; 5515 HUNT CLUB LN LLC; and | ) ) ) ) ) ) | DEFENDANTS |
| JUSTIN MADDIX | ) ) | DEFENDANT AND THIRD PARTY PLAINTIFF |
| vs. | ) ) | |
| JOHN GASTON | ) | THIRD PARTY DEFENDANT |

\* \* \* \*
**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
\* \* \* \*

Come the Defendants, Stephen Wood; Cayman Lane, LLC; Park 12 Property Management LLC; 5515, LLC; and 5515 Hunt Club Ln LLC, by counsel, and submit this Reply in Support of Motion to Dismiss ("Motion").

### INTRODUCTION

The Memorandum in Opposition to Motion to Dismiss ("Response") filed herein by the Plaintiff, Oak 44 Property Management, LLC ("Oak 44 I" and "Plaintiff"), highlights its malfeasance in both the initiation of the lawsuit and the recording of an improper *lis pendens*, and how it has prosecuted this case. The Response confirms that Oak 44 I is a defunct Wyoming entity that has purported to transfer its supposed claims to a new entity of the same name as a "successor" to Oak 44 I in order to avoid statutory defects of Wyoming law, Kentucky law, and the Federal

1

Rules of Civil Procedure. Because the Plaintiff is unable to cure *any* of these fatal defects, this action must be dismissed.

## ARGUMENT
### I. THE PLAINTIFF CANNOT MAINTAIN THIS LAWSUIT

The Plaintiff all but directly concedes that it cannot maintain this action. First, it acknowledges that Oak 44 I is "defunct" and cannot be reinstated under Wyoming law. Response, p. 4. Second, the Plaintiff does not contest the application of Federal Rule of Civil Procedure ("FRCP") Rule 17(b) to such an entity that cannot be reinstated and cannot bring a claim in Kentucky without a Certificate of Authority from the Kentucky Secretary of State. Rather, it contrives an assignment to a new entity formed nearly three months after initiating this action and the piecemeal use of inapplicable Rules of the Federal Rules of Civil Procedure and State law in a vain attempt to "swap" the Plaintiff in order to escape the Defendants' Motion.

The timeline of events is illustrative of the impropriety of the Plaintiff's attempt to evade dismissal. On March 14, 2024, Oak 44 I initiated this lawsuit by filing its Complaint and placing an improper *lis pendens* on the property owned by the Defendant, Cayman Lane, LLC (the "*Lis Pendens*"). *See* Defendants' Memorandum in Support of their Motion for Expedited Release of *Lis Pendens*, pp. 2-3 and Exhibit A thereto. The direct purpose thereof was to frustrate the pending sale of the Cayman Lane property and to force the Defendants, primarily Stephen Wood, to accede to the Plaintiff's unreasonable demands regarding its claimed interest in that property. The Defendants moved for the release of the *Lis Pendens* on March 29, 2024, seeking relief from this Court for the improper recording thereof. Thereafter, the Defendants answered and counterclaimed against the Plaintiff and added John Gaston, individually, as a third-party defendant to the Defendant's claims upon the grounds that Oak 44 I was a defunct entity and that Mr. Gaston, as its sole member, was potentially liable for any action taken by him purporting to

2

operate in the name of the defunct entity and without legal authority in Kentucky. The Plaintiff did not seek to cure its defect at that time.

On May 30, 2024, nearly four months after initiating the lawsuit, Mr. Gaston formed a new entity under Wyoming law, Oak 44 Property Management LLC ("Oak 44 II"), using substantially the same name as the prior defunct entity (but omitting the comma). Response, Exhibit 2, p. 2. At some point between the formation of Oak 44 II and the filing of its Response on July 31, 2024, Oak 44 I and Mr. Gaston purported to separately assign to Oak 44 II, for nominal consideration, their respective interests in the claims relating to Oak 44 I's Complaint. Response, pp. 7-8.

Following the filing of the Defendants' Motion and prior to the Plaintiff's Response, Oak 44 I, a defunct entity, served a Subpoena *Duces Tecum* upon Lowe's Home Centers, LLC and in violation of this Court's discovery order. *See* Order dated April 4, 2024, denying Plaintiff's request for leave to conduct expedited discovery, p. 2. A true and correct copy of the Notice of Service of Subpoena on Lowe's is attached hereto as <u>Exhibit A</u>. Oak 44 I subsequently withdrew its Subpoena following objections by the Defendants and the entry of the Court's July 31, 2024, Order. Finally, Oak 44 II, on its July 31 deadline for the Plaintiff's Response, obtained a Certificate of Authority to do business in Kentucky. Response, Exhibit 2, p. 6.

a. **Oak 44 I's Assignment is invalid.**

This Court should reject Oak 44 I's sham assignment as a plain attempt to evade Wyoming law, Kentucky law, and the Federal Rules of Civil Procedure. As previously stated, Wyoming law deems a "defunct" entity to "have forfeited any franchises, rights or privileges acquired under the laws thereof…" Wyo. Stat. Ann. § 17-29-705. Despite the Plaintiff's bald assertion to the contrary, a defunct entity is <u>not</u> entitled to activities allowed under the winding up statute. The Wyoming Limited Liability Company Act provides that "[a] **dissolved** limited liability company shall wind up its activities and the company continues after dissolution only for the purpose of

3

winding up." Wyo. Stat. Ann. § 17-29-702(a). (emphasis added).  However, **Oak 44 I is not dissolved – it is defunct.**  The Wyoming Limited Liability Company Act § 17-29-701, entitled "Events causing dissolution," expressly enumerates a finite list of events causing a Wyoming limited liability to be "dissolved," and an entity becoming "defunct" from failure to make its annual payment is not one of them:

> (a)  A limited liability company is dissolved, and its activities must be wound up, upon the occurrence of any of the following:
>
>> (i)  An event or circumstance that the operating agreement or articles of organization states causes dissolution;
>>
>> (ii)  The consent of all the members;
>>
>> (iii)  The passage of ninety (90) consecutive days during which the company has no members;
>>
>> (iv)  On application by a member, the entry of a court order dissolving the company on the grounds that:
>
> \*    \*    \*
>
>> (v)  On application by a member or dissociated member, the entry of a court order dissolving the company on the grounds that the managers or those members in control of the company:
>
> \*    \*    \*

Wyo. Stat. Ann. § 17-29-701.

While it was possible for Oak 44 I to cure its "defunct" status within two years, which would have related back, it failed to do so.  From that point forward, it was unable to take any further action as a nullity under Wyoming law, including any activities granted by statute to "dissolved" Wyoming entities, such as bringing this claim and transferring its assets.  A plain reading of these unambiguous statutes supports that conclusion, and Oak 44 I cites to no countervailing authority in which a permanently defunct entity was entitled to conduct any of the activities listed under the Wyoming Limited Liability Company Act winding up statute.  Plainly stated, Oak 44 I could not assign its interest in this action nor prosecute any other action in its name as a defunct entity under Wyoming law.

4

Furthermore, Oak 44 I's mere statement that it is and was "winding up" its affairs is belied by the averments in its Complaint. By its own admission, Oak 44 I continued to conduct business after falling into defunct status in 2021, which included hiring employees, entering contracts, and otherwise operating the business as a going concern, all without regard to its defunct status in Wyoming or the illegality of its operations in Kentucky. *See* Complaint, ¶¶ 9-10. In *Djourabchi v. Self,* 240 F.R.D. 5 (D.D.C. 2006), the District of Columbia District Court dismissed, as a party to the action and on its own accord, a permanently defunct Maryland corporation. Finding that its sole operator had continued business after the permanent forfeiture of the corporation's charter, the court ordered that, under Maryland law, he had no power to operate the corporation nor to maintain a suit in its name. *Id.* at pp. 10-11.

Oak 44 I attempts to obfuscate the issue by playing a "shell game" with its claim by simultaneously insisting that Oak 44 II is the "successor" by assignment to Oak 44 I's claims or, alternatively, that Mr. Gaston, individually, owns those claims, which he purports to assign to Oak 44 II. It is altogether unclear, both from Oak 44 I's Complaint and Response, who the real party in interest is, if any, or whether Oak 44 I's claim is extinguished in its entirety under Wyoming law (as discussed further hereinbelow). Oak 44 I's reliance on FRCP Rule 17(a)(3) is simply inapplicable to the Defendants' grounds for their Motion under FRCP Rule 17(b), and it is clear that, as a legal nullity, the Court lacks subject matter jurisdiction, Oak 44 I failed to state a claim for which relief can be granted, and it lacks standing to pursue the claims asserted herein.

Furthermore, a purported assignment between Mr. Gaston, individually, and Oak 44 II – two non-plaintiff parties to this action – has no bearing on this action initiated by Oak 44 I, the current Plaintiff herein, and whether it has capacity to sue under Rule 17(b). What is certain is that the current Plaintiff, Oak 44 I, cannot bring or maintain this lawsuit.

> **b. *Prancing Antelope* and the cases upon which it relies are wholly inapplicable.**

*Prancing Antelope* is a decision by the Wyoming Supreme Court, acting in equity, finding an "equitable assignment" between HOA1, a Wyoming Non-Profit corporation, which became permanently defunct as a result of the malfeasance of its sole director, who fraudulently sold common area property to a third-party, and HOA2, which was the "successor" to HOA1 under the applicable Covenants and Restrictions. *See generally, Prancing Antelope I, LLC v. Saratoga Inn Overlook Homeowners Ass'n, Inc.*, 478 P.3d 1171 (Wyo. 2021). For several reasons, *Prancing Antelope* is disanalogous and unsupportive of Oak 44 I's scheme to keep this action alive.

First, Oak 44 I completely misses the holding of the case – that actions taken by HOA1, the defunct entity, were completely voided by the Wyoming Supreme Court, which reversed the sale of property by HOA1 (purporting to be HOA2) to a *bona fide* third party and allowed possession of the property to remain with HOA2 as HOA1's equitable successor. *Id* at 1183. Thus, Oak 44 I's sole supporting case upholds the Defendants' argument that actions taken by Oak 44 I, as a defunct entity, are invalid because it is a legal nullity under Wyoming law. That holding would necessarily include both the filing of this action and the purported assignment by Oak 44 I.

Second, the entities the Wyoming Supreme Court examined were Wyoming Nonprofit Corporations, governed under an entirely different statutory regime. *See* Wyo. Stat. Ann. § 17-19-101 *et. seq*. That is particularly relevant here. The Wyoming Supreme Court's finding that HOA2 could be deemed a "successor" rested largely upon its analysis of the nonprofit corporation dissolution statute in which a nonprofit entity is barred from distributing property to its members upon administrative dissolution. *Prancing Antelope, supra.* at 1178-1179. That nonprofit corporation statute also expressly states that failing to deliver a timely annual report to the Wyoming Secretary of State places such an entity into **administrative dissolution**, while, on the other hand, the Wyoming Limited Liability Company Act would deem the entity "defunct" for

6

such failure (as opposed to dissolved). *Id.* at ftn. 5; *see also* Wyo. Stat. Ann. §§ 17-29-701, 17-29-702 and 17-29-705.

Third, the Wyoming Supreme Court also relied upon the enumerated language in the Declarations, Covenants and Restrictions (the "Covenants") that burdened the contested property to determine the intent of the developer and that required the creation of the HOA for the management of common areas and the administration and enforcement of the Covenants on the lots of the subdivision. *See Prancing Antelope, supra.* at 1179-1180. After reviewing the Articles, Bylaws, Covenants, and the Nonprofit Corporation statute, only then did it find that HOA2 could be an equitable successor to the interests of HOA1, unwinding the action of the director purporting to do business as the HOA following its defunct status. *Id.* at 1180.

Fourth, *Prancing Antelope* did not involve an assignment from the defunct entity to a new entity. The Court, acting in equity, determined that an "equitable assignment" from HOA1 to HOA2 had occurred by virtue of certain bad acts of HOA1's sole director with respect to the sale of contested common area property. Those bad acts included: (1) failing to distinguish HOA1 from HOA2 when selling the property to a third party, (2) actively fostering the misconception that the two entities were one and the same, and (3) representations by the director that were intended to lead the buyer to believe there was only one HOA. *Id.* at 1183. Ironically, perhaps, Oak 44 I is responsible for the same sort of subterfuge *Prancing Antelope* admonishes. Nowhere in Oak 44 I's Complaint does it indicate that it is a defunct entity or that it is proceeding in the action in the course of "winding up" as it now contends.[1] Nor did Oak 44 I notify Lowe's when serving its Subpoena that the captioned plaintiff was a legal nullity. Oak 44 I asks this Court to substitute it with Oak 44 II as the real party in interest. Oak 44 II cannot be the real party in interest

---

[1] *See* Complaint, ¶ 9 ("Oak 44 **is in the business of property management**, and at all relevant times managed several apartment complexes in the Lexington and Louisville areas.") (emphasis added).

7

to the claims alleged in the Complaint because it was formed *three months after the action was filed.* To allow Oak 44 II to merely swap in and enjoy the benefits of the filing of the defunct entity would lead to an unjust result to the Defendants and all other litigants similarly situated.

Fifth, the Missouri case line cited by the *Prancing Antelope* Court as "persuasive" similarly involved a permanently defunct Missouri nonprofit homeowner's association, and Oak 44 I's reliance on such cases is in error. Specifically, those cases found that the assignments from the defunct entities were never challenged by the opposing parties or they were otherwise supported under the applicable winding up statute for a Missouri nonprofit corporation and were not retroactive.

On that point, *Pioneer Point Homeowners Ass'n, Inc. v. Booth*, 179 S.W.3d 397 (Mo. Ct. App. 2005) states as follows:

> **Appellants have not challenged the validity of the assignment in this appeal**, rather they argue that "notwithstanding a purported assignment" Homeowners Association II does not have the right to impose assessments and file liens because the corporation so entitled was forfeited. Therefore, the only question before us is whether Missouri law allows for an assignment between corporations as to rights and obligations under restrictive covenants despite the fact that the assignor's name expressly appears in the covenant(s).

*Pioneer Point Homeowners Ass'n, Inc., supra.* at 401 (Mo. Ct. App. 2005). (emphasis added). Furthermore, in *DeBaliviere Place Ass'n,* 337 S.W.3d 670 (Mo. 2011), the Missouri Supreme Court, in *dicta*, postulated that an assignment from HOA1, which was in "administrative forfeiture" (a category of entity that no longer exists under Missouri law as a result of the repeal of the administrative forfeiture statute in 1995), to successor HOA2 under the applicable winding up statue and by reliance on the intent of the Covenants therein, but found that any assessments and foreclosures made by the successor HOA 2 prior to its assignment were not valid as it was not the "successor" until the assignment was effective. *DeBaliviere Place Ass'n, supra.* at 679. The assignment from HOA1 to HOA2 was also unchallenged in that case. *Id.* at 677.

8

Thus, even if the assignment from Oak 44 I to Oak 44 II is valid, any causes of action and/or claims supposedly accruing to Oak 44 I during its "defunct" status – **which all of Plaintiff's claims in its Complaint are** – cannot be assigned by Oak 44 I because it no longer existed as a legal entity at that time. While Oak 44 II may be able to succeed to obligations and rights acquired by Oak 44 I prior to becoming defunct, Oak 44 I cites no support for its proposition that an assignment of claims "accrued" by a defunct legal nullity can be assigned to a new successor entity.

Sixth, the overwhelming policy considerations of *Prancing Antelope* have no application to this action. There, the court was faced with allowing a bad actor, who itself had negligently failed to comply with the Wyoming corporate requirements, to sell common area property of a homeowner's association to a third party, thereby stripping the homeowners from the ownership of such property to which they were entitled under the Covenants and preventing the formation of a new homeowner's association in perpetuity. There are no equitable considerations relevant here. Oak 44 I and/or Mr. Gaston are the negligent parties who have failed to comply with legal obligations under Wyoming law and Kentucky law. Oak 44 I's reliance on non-profit corporation cases in which innocent homeowners would be divested of property rights through no fault of their own is wholly misplaced.

Finally, the Plaintiff technically fails its own test which it distills from *Prancing Antelope*. Oak 44 I's legal name is "Oak 44 Property Management, LLC". *See* Defendants' Memorandum in Support of Motion to Dismiss, Exhibit A. Oak 44 II's legal name is "Oak 44 Property Management LLC" which lacks the comma following "Management." *See* Response, Exhibit 1, Declaration of Jeffrey Nye. Thus, to the extent any of Oak 44 I's assertions are correct, Oak 44 II cannot be the legal successor as it has a different name. The Plaintiff ignores this distinction in its Response and on the Assignments it included therewith.

### c. *The Plaintiff's reading of KRS § 14A.9-020 is erroneous.*

Kentucky Revised Statutes ("KRS") § 14A.9-020 governs the consequences of a foreign entity doing business in Kentucky without a Certificate of Authority. The Plaintiff misreads KRS § 14A.9-020(3) to allow for the "swapping" of plaintiffs. Notably, the Plaintiff cites no authority where a foreign entity without a Certificate of Authority commenced a legal action in Kentucky, assigned its interest to a "successor," and then had its successor obtain that Certificate in order to cure the predecessor's statutory deficiency. Such an interpretation of Kentucky law would allow any entity lacking the ability to obtain a Certificate of Authority to pursue its legal claims by simply transferring those claims to a new "successor." That could never be the legislature's intent.

The clear import of KRS § 14A.9-020(3) is that the entity *bringing the lawsuit must obtain the Certificate of Authority*. That entity may be a successor or assign of the original entity (which as discussed above is not the case here), but it must be the plaintiff. Here, Oak 44 I is the Plaintiff and, as discussed in detail in the Defendants' Motion, it cannot obtain a Certificate of Authority in Kentucky because it is permanently defunct under Wyoming law. Under KRS § 14A.9-020 the consequence is dismissal, not a substitution of parties. *See Diktic, Inc. v. Somerset Refinery, Inc.*, 2003 WL 21673962 at *2 (With respect to an Illinois corporation that was administratively dissolved and whose reinstatement would not relate back under Illinois law, the Kentucky Court of Appeals held, under the prior version of KRS § 14A.9-020(2), that "'[t]he dissolution of a corporation implies its utter extinction and obliteration as a body capable of suing or being sued.' [internal citation omitted]. We conclude that Diktic did not exist as a corporate entity when it filed its civil action against [the defendants] and that it thus lacked the capacity to file the action."). The *Diktic* Court then affirmed the lower court's summary judgment in favor of the defendants finding as follows:

> Diktic did not dispute, either before the circuit court or this court, that **it was a dissolved corporation when it filed the civil action against Somerset and Lynch**. Further, it made no showing that further discovery could possibly have changed the facts. Because there were no fact issues regarding the issue of capacity to sue, the circuit court did not err in awarding summary judgment prior to the completion of discovery.

*Id.* at *3. (emphasis added). Oak 44 I has conceded that it was defunct when it filed this action, and the consequence under KRS § 14A.9-020 is dismissal, not substitution. Furthermore, inasmuch as Wyoming law governs Oak 44 I's rights as a Wyoming entity, Kentucky corporate statutes that allow for a dissolved corporation to bring suit are wholly inapplicable here and cannot save Oak 44 I's claim.[2]

## CONCLUSION

The Plaintiff has failed to meet its burden to demonstrate that there is subject matter jurisdiction, how it is entitled to relief as a "defunct" entity, and how it has capacity to sue under both the FRCP and Kentucky law. The Plaintiff's Complaint must be dismissed.

Respectfully submitted,

/s/James M. Mooney
Dan M. Rose, Esq.
J. Wesley Harned, Esq.
James M. Mooney, Esq.
ROSE CAMENISCH STEWART MAINS PLLC
326 South Broadway
Lexington, Kentucky  40508
Phone: (859) 721-2100
E-mail:   dan.rose@rcsmlaw.com
          wes.harned@rcsmlaw.com
          jim.mooney@rcsmlaw.com

Attorneys for Defendants, Stephen Wood; Cayman Lane, LLC; Park 12 Property Management LLC; 5515, LLC; and 5515 Hunt Club Ln LLC

---

[2]  *See Hardwoods v. Coomer*, 2020 U.S. Dist. LEXIS 11029 (a dissolved Kentucky Corporation has authority under KRS § 271B.14-050, the Kentucky Business Corporations Act, to bring and defend actions in its name).

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed with the Court's E-Filing System on the 15th day of August, 2024, which serves an electronic copy to the following:

Joshua M. Smith, Esq. (jms@sspfirm.com)
Jeffrey M. Nye, Esq. (jmn@sspfirm.com)
Bailey E. Sharpe, Esq. (bes@sspfirm.com)
STAGNARO, SABA & PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208

James O'Toole, Esq. (jotoole@soblawfirm.com)
SMITH, O'TOOLE & BROOKE
3080 Harrodsburg Road., #101
Lexington, Kentucky 40503

George Rikos, Esq. (george@georgerikoslaw.com)
555 West Beech Street, #500
San Diego, California 92101

/s/James M. Mooney
James M. Mooney

Attorney for Defendants, Stephen Wood; Cayman Lane, LLC; Park 12 Property Management LLC; 5515, LLC; and 5515 Hunt Club Ln LLC