UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| OAK 44 PROPERTY MANAGEMENT, LLC,<br><br>  Plaintiff,<br><br>v.<br><br>JUSTIN MADDIX, *et al.*,<br><br>  Defendants. | CASE NO. 5:24-CV-63-KKC<br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a motion to dismiss (DE 48) filed by Defendants Stephen Wood; Cayman Lane, LLC; Park 12 Property Management LLC; 5515, LLC; and 5515 Hunt Club Ln LLC (collectively, the "Defendants"). Further, Defendants have a motion to expedite release of *lis pendens* pending before the Court. (DE 20.) Both motions have been fully briefed. For the following reasons, the Court will grant the motion to dismiss and motion to expedite release of *lis pendens*.

I.  **Background**

Plaintiff Oak 44 Property Management, LLC ("Oak 44"), an entity wholly owned by John Gaston ("Gaston"), filed this action asserting claims of fraud against Stephen Wood and other named defendants. Oak 44 alleges that Wood used his credit account and separate credit accounts with Home Depot and Lowe's to pay for his personal expenses and the expenses of his personal companies in a scheme to defraud Oak 44. Cayman Lane, LLC is one such company, which is wholly owned by Wood for the purpose of holding certain real property located at 3660 Cayman Lane, Lexington, Kentucky 40509 (the "Property"). Oak 44 further alleges that Wood fraudulently charged at least $80,837.66 in labor and materials to Oak 44's credit accounts for the benefit of the Property.

Following the filing of the Complaint in this action, Oak 44 filed a notice of *lis pendens* on the Property (the "*Lis Pendens*") with the Fayette County Court Clerk. Defendants argue that this filing was only meant to upset a pending sale of the Property to a prospective buyer and subsequently moved for the Court to order its removal.

Defendants later filed a motion to dismiss, seeking dismissal for a lack of subject matter jurisdiction and for failure to state a claim for which relief may be granted. They further reemphasized their request that the Court order the removal of the *Lis Pendens*. The Court will analyze each motion in turn.

II.   Analysis

   A.   Motion to Dismiss

Defendants argue that this action should be dismissed for a lack of subject matter jurisdiction and for failure to state a claim for which relief may be granted. *See* Fed. R. Civ. P. 12(b)(1), 12(b)(6). Specifically, Defendants assert that Oak 44 is "no longer a Wyoming limited liability company" after failing to meet its statutory obligations under Wyoming law, "and as such, has no capacity to bring a lawsuit[.]" (DE 48-1 at 3.) Further, Defendants argue that the non-existence of Oak 44 "divest[s] this Court of subject matter jurisdiction to hear any claims made in its name and as such, [Oak 44] has failed to state a claim in which relief can be granted." (*Id.*)

From the outset, this Court emphasizes that federal courts have routinely found that "capacity to sue" arguments are not jurisdictional. *Hart v. Bond*, 2014 U.S. Dist. LEXIS 96068, at *6-7 (N.D. Ohio July 15, 2014); *LaMie v. Smith*, 2012 U.S. Dist. LEXIS 101824, at *6 (W.D. Mich. June 12, 2012); *Estate of Burkhart v. United States*, 2008 U.S. Dist. LEXIS 65893, at *10 (N.D. Cal. Aug. 26, 2008); *Davis v. Lifetime Capital, Inc.*, 2014 U.S. Dist. LEXIS 198879, at *4 n.1 (S.D. Ohio Oct. 10, 2014). Courts have instead found

that the defense of lack of capacity to sue can be properly utilized in motions to dismiss made pursuant to Rule 12(b)(6). *Marada Indus. v. Anchor Tool & Die Co.*, 2023 U.S. Dist. LEXIS 173598, at *4-5 (N.D. Ohio Sept. 28, 2023); *Capital City Energy Grp., Inc. v. Kelley Drye & Warren LLP*, 2011 U.S. Dist. LEXIS 125784, at *2 (S.D. Ohio Oct. 31, 2011) (quoting *Weiner v. Winters*, 50 F.R.D. 306, 307-08 (S.D.N.Y. 1970)). Accordingly, the Court will only consider Defendants' argument for dismissal under Rule 12(b)(6).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.*

The Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009). While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a formulaic recitation of the elements of a cause of action will not do. *Twombly*, 550 U.S. at 555.

Federal Rule of Civil Procedure 17(b) controls whether a party has capacity to sue or be sued. Limited liability companies' capacity to sue is governed "by the law of the state where the court is located[.]" Fed. R. Civ. P. 17(b)(3). In Kentucky, foreign entities transacting business within the Commonwealth are required to file a certificate of authorization with the Secretary of State. KRS § 14A.9-010(1). This requirement is subject

to limited exceptions—none of which apply in this matter. Specifically, Kentucky law states that: "A foreign entity transacting business in this Commonwealth without a certificate of authority **may not** maintain a proceeding in any court in this Commonwealth until it obtains a certificate of authority." KRS § 14A.9-020(1) (emphasis added). To obtain a certificate of authority, a foreign entity must represent "that the foreign entity validly exists under the laws of its jurisdiction of organization." KRS § 14A.9-030(2).

The Complaint states that Oak 44 is a Wyoming limited liability company. (DE 1 at 3.) Relevant Wyoming law governing the formation and maintaining of limited liability companies states: "If any limited liability company has failed to pay the fee required by W.S. 17-29-210 or any penalties imposed under W.S. 17-28-109, it shall be deemed to be transacting business within [Wyoming] without authority and to have forfeited any franchises, rights or privileges acquired under the laws thereof." Wyo. Stat. Ann. § 17-29-705(b). "Unless compliance is made within sixty (60) days of the date of notice the limited liability company shall be deemed **defunct** and to have forfeited its articles of organization . . . ." *Id.* Limited liability companies that are deemed defunct have only two years after such forfeiture to be rived and reinstated. *Id.*

Oak 44 does not dispute that it was a defunct limited liability company under Wyoming law as of 2021 and that it failed to be reinstated within the two-year period. Instead, it argues that the remedy for its certificate of authority deficiency is a stay in proceedings, not outright dismissal. (DE 53 at 2-4.) In support of its argument, it points to KRS § 14A.9-020(3), which states: "A court may stay a proceeding commenced by a foreign entity, its successor, or assignee until it determines whether the foreign entity, its successor, or assignee requires a certificate of authority. If it so determines, the court may further stay the proceeding until the foreign entity, its successor, or assignee obtains the

certificate." Oak 44 argues that this provision lays out the proper remedy for a certificate of authority issue and that dismissal is inappropriate. And while it is true that nothing in the statute mentions the dismissal of actions for lack of a certificate of authority, the provision Oak 44 relies upon hinges on the possibility that the foreign entity, its successor, or its assignee *can* obtain a certificate of authority in the first place.

The record shows that Oak 44 was defunct and lacked a certificate of authority when it started this action. It further failed to revive and reinstate itself under Wyoming law within the allotted two-year period. Despite this failure, Oak 44 appears to argue that filing this action was part of its "winding up" activities permitted for dissolved entities under Wyoming law. The Court finds that claim unpersuasive. The record shows that Oak 44 continued its business operations following its designation as defunct in 2021, which included "manag[ing] several apartment complexes in the Lexington and Louisville areas" as well as "employ[ing] approximately 8 people to manage day-to-day operations of those complexes[.]" (DE 1 at 4.) Oak 44's complaint omits the fact that it was a defunct entity and that it was not meant to engage in standard business—be it in either Wyoming or Kentucky—nor does it give any indication that the action was part of its winding up of its operations.

Defendants further argue that Oak 44 was not entitled to the winding up of business at all because those rights are reserved for dissolved entities, not defunct. They stress that dissolved entities and defunct entities are separate under Wyoming law, pointing to the unique conditions for dissolution, see Wyo. Stat. Ann. § 17-29-701, and conditions for being deemed defunct, see Wyo. Stat. Ann. § 17-29-705. While it makes some sense that the Wyoming legislature would not have made a distinction between these two classifications if they were intended to be one and the same, the Court need not decide this issue because

Oak 44 ultimately lacks capacity to sue whether dissolved or defunct.

Oak 44, however, argues that the Court should find that it assigned its rights and privileges to a new "Oak 44" entity created during the pendency of this action. It cites to *Prancing Antelope I, LLC v. Saratoga Inn Overlook Homeowners Ass'n*, 478 P.3d 1171 (Wy. 2021), in support of this argument. This case involved an "equitable assignment" between a defunct Wyoming non-profit corporation (HOA1) and its successor (HOA2) under the applicable Covenants and Restrictions, and a dispute regarding the ownership of a piece of real property owned by HOA1. Notably, this dispute and claim arose after HOA2 has been formed. The Wyoming Supreme Court concluded that HOA2 was an appropriate successor to the defunct HOA1 and decided the ownership of the property in question. Yet this case is not analogous to the current action for multiple reasons.

Not only did *Prancing Antelope* concern an analysis of Wyoming's non-profit—not limited liability company—statutory framework and rely heavily on the Covenants and Restrictions carried by the property in question, but the proposed successor, HOA2, actually existed at the time of the underlying claim's accrual. This coexistence, despite the root of bad acts taken by HOA1's director, helped the Wyoming Supreme Court find that an equitable assignment of rights had taken place.

Here, however, the new Oak 44 entity was created *three months after* this action had commenced. There was no coexistence when the underlying claim accrued. As to why this new Oak 44 was created, the simplest answer is the most persuasive: the defunct Oak 44 and its sole owner, Gaston, realized that it had a capacity to sue problem and attempted to circumvent this procedural defect by claiming an assignment of rights to this new entity. It is unlikely that such an assignment is valid in the first place, as defunct limited liability companies under Wyoming law "have forfeited any franchises, rights or privileges acquired

6

under the laws thereof." Wyo. Stat. Ann. § 17-29-705(b). In other words, Oak 44 forfeited its rights when it became defunct and failed to reinstate itself, and therefore had no rights to assign to any new entity.

And even if the Court found that being defunct was tantamount to being administratively dissolved, the proposed assignment of rights still fails. Oak 44's actions were not covered by Wyoming's winding up statute because it did not hold itself out to being winding up its business. In its Complaint, Oak 44 represented itself as an existing Wyoming limited liability company that "is in the business of property management . . . at all relevant times . . . ." (DE 1 at 4.) It makes no mention of its defunct status in its Complaint, nor does it construe this action as part of any winding up activities covered by Wyoming law. Oak 44 first argues that it was winding up its business in its response to Defendants' motion to dismiss, claiming generally that the "Wyoming Supreme Court has explained that the powers to operate, litigate and compromise, transfer assets, and perform other necessary or appropriate tasks, includes the ability to do those things *even after the reinstatement period has expired* following administrative dissolution" and "an administratively dissolved entity is even entitled to assign its assets to a new entity with the exact same name, and the new entity (now in good standing) can proceed as the successor to the defunct entity." (DE 53 at 6.)

Yet these powers "to operate, litigate and compromise, transfer assets, and perform other necessary or appropriate tasks" are premised on these powers being used *in the winding up* of an entity's business. Nothing in the record suggests that Oak 44 was in the process of winding up its business. In fact, the record suggests that Oak 44 continued to conduct business, in spite of its defunct status under Wyoming law and lack of certificate of authority under Kentucky law, and had no intention of closing its doors. This new Oak 44

entity was formed after the action had been commenced for the sole purpose of defeating its capacity to sue problem, which would circumvent the consequences of its failure to follow both Wyoming and Kentucky law. Because there was not a valid assignment of rights and it was not in the process of winding up its business activities, Oak 44 does not have a proper assignee or successor under Kentucky law and cannot receive a certificate of authority. And because Oak 44 can seemingly never receive a certificate of authority, a stay in proceedings is not an appropriate remedy. Accordingly, the Court will grant Defendants' motion to dismiss for lack of capacity to sue.

B. **Motion to Expedite Release of *Lis Pendens***

Under Kentucky law, a *lis pendens* is a "notice, recorded in the chain of title to real property . . . to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome." *Greene v. McFarland*, 43 S.W.3d 258, 260 (Ky. 2001). A *lis pendens* notice may be filed when any action is "commenced or filed . . . in which title to . . . real property, or any interest therein, is in any manner affected or involved[.]" KRS § 382.440. The Kentucky Supreme Court has explained that "[a] *lis pendens* notice is appropriate in situations where the title to property is at stake (actions for partition, quiet title, and will contests, for example) . . . . Actions for general debt do not give rise to valid *lis pendens* actions because there is no actual . . . interest in the real property." *Greene*, 43 S.W.3d at 260. Kentucky's applicable *lis pendens* statute makes it that the actual interest in the subject property must exist at the time the action commences or is filed. *See* KRS § 382.440.

Because the Court has found that Oak 44 lacks capacity to sue and that dismissal is the appropriate remedy in this action, there can be no "actual interest" in the Property for the purpose of maintaining the *Lis Pendens*. Accordingly, the Court will order the removal

of the *Lis Pendens* notice from the Property.

### III.   Conclusion

For the aforementioned reasons, the Court hereby ORDERS as follows:

1.   Defendants' motion to expedite release of *lis pendens* (DE 20) is GRANTED to the extent that Oak 44 SHALL REMOVE the *lis pendens* notice from the Property within fourteen (14) days of the entry of this order;

2.   Defendants' motion to dismiss (DE 48) is GRANTED; and

3.   the Court will enter a judgment consistent with this opinion.

This 22nd day of January, 2025.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY