**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

| | | |
|---|---|---|
| Oak 44 Property Management, LLC | : | **Case No. 5:24-cv-0063** |
| | : | |
| Plaintiff | : | **Judge Caldwell** |
| v. | : | |
| | : | |
| Justin Maddix, et al. | : | |
| | : | **COUNTERCLAIM OF JOHN GASTON** |
| Defendants | : | **AGAINST JUSTIN MADDIX,** |
| | : | **STEPHEN WOOD, LEXINGTON 859** |
| and | : | **SERVICE LLC, CAYMAN LANE LLC,** |
| | : | **PARK 12 MANAGEMNET LLC, 5515** |
| Justin Maddix, | : | **LLC, AND 5515 HUNT CLUB LN LLC** |
| | : | |
| Defendant and Third | : | |
| Party Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| John Gaston | : | |
| | : | |
| Third Party Defendant | : | |
| | : | |
| | : | |

**<u>JOHN GASTON'S COUNTERCLAIMS AS TO ALL DEFENDANTS</u>**

For his counterclaims against Stephen Wood, Justin Maddix, Lexington 859 Service LLC, Cayman Lane LLC, Park 12 Property Management LLC, 5515 LLC, and 5515 Hunt Club Ln LLC, John Gaston alleges as follows:

1.     The gravamen of this fraud case is that the individual defendants, Justin Maddix and Stephen Wood, used a series of sham companies and LLCs (the other

1

defendants) to embezzle hundreds of thousands of dollars from their employer, Gaston (a sole proprietor operating under the name Oak 44).

## The Scheme Generally

2.     Gaston is in the business of property management, and at all relevant times, managed several apartment complexes in the Lexington area ("Kentucky Complexes"). From August 21, 2020 to October 9, 2021, those properties were managed by Oak 44 Property Management LLC, a Wyoming limited liability company that was wholly owned by Gaston.

3.     Oak 44 Property Management, LLC was organized on August 21, 2020, and this Court has concluded (doc. 55) that it was administratively dissolved by the Wyoming Secretary of State on October 9, 2021.

4.     Following the administrative dissolution of Oak 44 Property Management, LLC, Gaston continued to operate his Kentucky property management business under the "Oak 44" trade name as (per the Court's ruling) a sole proprietorship (hereinafter, "Gaston" may at times be collectively referred to as "Oak 44").

5.     As the sole proprietor of Oak 44, any claims arising on or after October 10, 2021 with respect to his Oak 44 property management business are Gaston's personal claims.

6.     Gaston employed approximately 8 people to manage the day-to-day operations of the Kentucky Complexes, including Maddix and Wood.

2

7.     Maddix and Wood were supervisory employees, and as such, were authorized to use Oak 44's credit accounts, including both its American Express card and its credit accounts with certain vendors, such as Home Depot and Lowe's.

8.     Unbeknownst to Gaston, Maddix and Wood engaged in a scheme to defraud Oak 44 by using Oak 44's accounts to pay for both personal expenses and expenses of the defendant LLCs, none of which have any relation to any of the Kentucky Complexes that Oak 44 manages.

9.     Unbeknownst to Gaston, Maddix and Wood additionally used at least one sham LLC (Defendant Lexington 859) to inflate the expenses of Oak 44's properties and skim money off the top of legitimate expenses.

10.     Gaston's investigation is ongoing, but to date has uncovered well over $100,000 in theft by the defendants, not including the costs of investigation (such as accounting services) and attorney's fees, both of which Gaston is entitled to recover under Kentucky law.

11.     When confronted with evidence of their fraud, both Maddix and Wood offered to repay a small part of the money they have stolen, but have not repaid Gaston in full (or anything close to it) and Gaston's outstanding damages are well into six figures.

12.     What follows is a non-exhaustive list of the fraudulent transactions discovered by Gaston to date.

<u>The Cayman Scheme</u>

3

13. Defendant Cayman Lane LLC owns or owned a single-family home at 3660 Cayman Lane, Lexington, Fayette County, Kentucky (the "Cayman Lane House").

14. The Cayman Lane House was a "flip" project operated by Maddix and Wood for personal profit. It has no relationship to Oak 44 or Gaston. Wood is the sole member of Cayman Lane LLC.

15. On or about March 3, 2023, Wood ordered from Home Depot store no. 2307 a pair of Rheem-brand "performance platinum" tankless water heaters at a total cost of $2,979.72, as evidenced by Home Depot invoice no. H2307-172867.

16. Wood paid for the water heaters with Oak 44's credit card, and claimed that they were needed for properties managed by Oak 44 (namely, the "Devonport" and "Cambridge" apartment complexes).

17. The water heaters were neither delivered to nor installed at either of those apartment complexes. In fact, tankless water heaters are not compatible with the apartment units at those complexes.

18. Instead, those water heaters were delivered to and installed at the Cayman Lane House, as part of the renovation or "flip" of that home.

19. On or about April 25, 2023, Wood ordered from Home Depot store no. 2303 a variety of fixtures (such as doorknobs and handles, deadbolts, and exterior garage lamp shades) for a total cost of $1,538.34, as evidenced by Home Depot invoice no. H2303-225431.

20.     Wood paid for these fixtures with Oak 44's credit card, and claimed that they were needed for another property managed by Oak 44 (the "Crosskeys" apartments).

21.     These fixtures were neither delivered to nor installed at that apartment complex; they were installed at the Cayman Lane House. In fact, several of the fixtures (including most notably the exterior garage lamp shades) were visible in the MLS real estate listing for the single-family home on Cayman Lane.

22.     On or about April 27, 2023, Wood rented equipment from Home Depot store no. 2307, for a total cost of $663.14, as evidenced by Home Depot invoice no. 2307-90-60229.

23.     Wood paid for the rental with Oak 44's credit card, but used the equipment in the course of the renovation of the Cayman Lane House.

24.     On or about February 7, 2023, Wood hired Yesier Structural at a cost of $5,800 to perform exterior building repair at the Cayman Lane House.

25.     Wood paid for this service with Oak 44's credit card, claiming that it was needed for another Oak 44-managed property (the "Ironwood" apartments).

26.     On or about May 15, 2023, Wood charged $1,267.15 at Lexington Trailer & Hitch, for equipment related to the Cayman Lane House.

27.     Wood charged this expense to Oak 44's credit card, falsely claiming that the expense was necessary for multiple Oak 44-managed properties.

28.    In approximately late May 2023, Wood purchased $2,759.87 worth of trees and shrubbery from Redmonds Garden Landscaping.

29.    At approximately the same time, Wood hired BlackHorse Landscaping at a cost of $4,236.60 for landscaping services, which services included the installation of the plants from Redmonds Garden Landscaping.

30.    BlackHorse Landscaping performed its work, including the installation of the Redmonds Garden Landscaping plants, at the Cayman Lane House.

31.    Wood directed BlackHorse Landscaping to falsify its invoice to reflect that the work was done at the Cambridge apartment complex. BlackHorse Landscaping (which is not accused of any wrongdoing here) agreed to Wood's request to change its invoice – but was fully cooperative in Gaston's investigation of this fraud, and disclosed to Gaston that Wood had directed BlackHorse Landscaping to falsify its invoice.

32.    Wood paid for the Redmonds Garden Landscaping trees and shrubbery and BlackHorse Landscaping's services with Oak 44's credit card, and falsely claimed that the work was done at the Cambridge apartments.

33.    From about June 6, 2023 to July 6, 2023, Wood purchased from Ferguson Enterprises $24,889.13 worth of bathroom fixtures, kitchen fixtures, and other similar items.

34.     The bathroom and kitchen fixtures include those evidenced by Ferguson invoice numbers 4763668, 4763668-1, 4763668-2, and 4745987, which show (among other things):

    a.  Two "modern brushed brass" faucets, tank levers, and heated toilet seats for the "master bathroom";

    b.  Faucets, bathroom sinks, showerheads, and other fixtures for at least four "guest bath" or "powder" rooms;

    c.  Faucets, a refrigerator, a cooktop, a cooktop hood, a double oven, a "microwave drawer", and a dishwasher – for the "indoor kitchen"; and

    d.  Faucets, a "pot filler", a sink, and garbage disposal for the *outdoor* kitchen.

35.     These Ferguson invoices all identify the goods as having been "Sold to" "Stephen Wood, 3660 Cayman Lane," with the same "Ship to" address.

36.     These goods were in fact installed at the Cayman Lane House.

37.     Many of these fixtures, including in particular those in the outdoor kitchen, are visible in the MLS real estate listing for the Cayman Lane House.

38.     Wood paid the Ferguson invoices with Oak 44's credit card, and falsely claimed that the goods evidenced by them were installed at various apartment complexes managed by Oak 44 (namely, the Devonport, Cambridge, Crosskeys, and Ironwood complexes).

39.     None of the Oak 44-managed apartment complexes have units with outdoor kitchens or five bedrooms.

40.     Between January and July 2023, Maddix hired Maeser Master Services to perform $8,210.02 worth of plumbing services at the Cayman Lane House.

41.     Maddix padi for these services with Oak 44's credit card.

42.     Between late June and early August 2023, either Maddix or Wood (or both) hired a company called "Steven Contracting" to perform renovation work at the Cayman Lane House, at a cost of at least $15,247.85.

43.     The principal of Steven Contracting is Maddix's brother-in-law, non-party Steven Ross.

44.     Steven Contracting's invoices were paid using Oak 44's credit card, even though no services were provided to or for any apartment complexes managed by Oak 44.

45.     Gaston's investigation of Maddix and Wood's fraud related to Cayman Lane LLC is ongoing, but the total expenses fraudulently charged to and paid by Oak 44 total at least $80,837.66 identified to date, not including the cost of investigation and attorney's fees.

<u>Other Fraud by Maddix and Wood</u>

46.     Defendant Park 12 Property Management is (like Gaston) in the business of managing apartment complexes.

8

47.    Park 12 Property Management is owned by Wood.

48.    Unbeknownst to Gaston, while Maddix and Wood were employed by Oak 44 in Gaston's property-management business, they were simultaneously working in property management for Park 12 Property Management.

49.    On or about August 23, 2022, Wood purchased a variety of fixtures (e.g., doorknobs, switches, wall plates, a countertop, and about 289 square feet of faux-oak "Click Lock Luxury Vinyl Plank Flooring" from Home Depot store no. 2307 at a cost of $1,414.52, as evidenced by Home Depot invoice no. H2307-158825.

50.    Wood paid this invoice with Oak 44's credit card, and falsely claimed that the goods were for an Oak 44-managed property.

51.    The goods were not installed at that property and the invoice says they were for Park 12 Property Management.

52.    On or about January 30, 2023, Wood purchased eight "adhesive tub walls" from Home Depot store no. 2307 at a cost of $1,823.03, as evidenced by Home Depot invoice no. H2307-170410.

53.    Wood paid this invoice with Oak 44's credit card, and falsely claimed that the goods were for an Oak 44-managed property.

54.    The goods were not installed at an Oak 44-managed property, and the invoice says they were for Park 12 Property Management.

55.     Also on or about January 30, 2023, Wood purchased sinks, countertops, and quarter round (flooring trim) from Home Depot store no. 2307 at a cost of $1,394.78, as evidenced by Home Depot invoice no. H2307-170440.

56.     Wood paid this invoice with Oak 44's credit card, falsely claiming that the goods were for an Oak 44-managed property.

57.     The goods were not installed at an Oak 44-managed, and the invoices says they were for a Park 12 Property Management property.

58.     Also on or about January 30, 2023, Wood purchased framing nails, stair and carpet trim, construction adhesive, two extension cords, a putty knife, twelve tubes of sealant, two cabinet bases, an under-cabinet range hood, and a 20-ounce can of Red Bull, from Home Depot store no. 2307 at a total cost of $1,108.89, as evidenced by Home Depot invoices numbers H2307-170416 and H2307-170492.

59.     Wood paid these invoices with Oak 44's credit card, falsely claiming that the items were for an Oak 44-managed property.

60.     The goods were not installed or used at an Oak 44-managed property, and the invoices say that they were for a Park 12 Property Management property.

61.     On or about March 15, 2023, Wood purchased approximately 2,000 square feet of faux-hickory "Click Lock Luxury Vinyl Plank Flooring" from Home Depot store no. 2307 at a cost of $8,049.22, as evidenced by Home Depot invoice no. H2307-173831.

62.     Wood paid this invoice with Oak 44's credit card, falsely claiming that the flooring was for two properties managed by Oak 44 – the Devonport and Cambridge complexes.

63.     The flooring was not installed at any property managed by Oak 44.

64.     Instead, the invoice for that flooring indicates that the "job description" was "Madison".

65.     The apartment complex known as "The Madison Apartments" is located at 5515 Hunt Club Lane in Louisville, Kentucky. Upon information and belief, The Madison Apartments is either owned by Defendant 5515, LLC and leased to Defendant 5515 Hunt Club Ln LLC, or is owned by Defendant 5515 Hunt Club Ln LLC and leased to Defendant 5515, LLC. Defendant 5515 Hunt Club Ln LLC has registered "The Madison Apartments" as a trade name with the Kentucky Secretary of State.

66.     Park 12 Property Management manages The Madison Apartments.

67.     On or about March 19, 2023, Wood purchased "Keena Pearl" shower panels from Home Depot store no. 2303 at a cost of $601.60, as evidenced by Home Depot invoice no. H2303-222930.

68.     Wood paid for this invoice with Oak 44's credit card, but the invoice shows that the goods were sold to "Park 12 Property Management."

69.     The shower panels were not installed at any Oak 44-managed property.

70.    On or about April 25, 2023, Wood purchased $1,538.34 worth of fixtures from Home Depot store no. 2303, as evidenced by Home Depot invoice no. H2303-225431.

71.    Wood paid this invoice with Oak 44's credit card, but the invoice shows that the goods were sold to "Park 12 Property Management."

72.    The fixtures were not installed at any Oak 44-managed property.

73.    Maddix and Wood made many thousands of dollars of additional purchases to Home Depot, which Gaston is still working to catalog and investigate.

74.    Just as Maddix and Wood did with Home Depot, Maddix and Wood also spent thousands and thousands of dollars in purchases at Lowe's. To date, Gaston has been unable to fully investigate those purchases because (a) Wood unlawfully prevented (and continues to prevent) Gaston from accessing his own Lowe's account, and (b) the defendants objected to efforts to obtain information from Lowe's via subpoena after the complaint was filed more than a year ago.

75.    In addition to using Oak 44's accounts to purchase goods for use or installation at Park 12 Property Management properties, Maddix and Wood also directed Oak 44 employees to perform work or provide services at Park 12 Property Management properties, but told Gaston that the employees were performing work or providing services at Oak 44-managed properties.

<u>The Primrose Circle House</u>

76.     Upon information and belief, at least some of the purchases charged to Oak 44's credit cards by Maddix or Wood were actually for goods or services for Maddix's home at 202 Primrose Circle, Richmond, Kentucky.

<u>The Lexington 859 Scheme</u>

77.     Maddix, in his managerial role for Oak 44, was responsible for and had the authority to hire tradesmen to provide necessary services to properties managed by Oak 44 in the Lexington area.

78.     Maddix used a sham company, Defendant Lexington 859, to artificially inflate the cost of those services so he could skim money off the top.

79.     Beginning in at least July of 2022, when services (such as electrical work, painting, or plumbing) were required, Maddix would contact tradesmen on behalf of Oak 44 and obtain a quote and request an invoice for their services.

80.     After learning the true costs of the service, Maddix would increase that cost by an indeterminate amount (upon information and belief, more than 20% on average).

81.     Rather than paying the true invoice on behalf of Oak 44, Maddix would then create a fake invoice on the letterhead of Lexington 859 based on the fake, marked-up price.

82.     On at least some occasions, Maddix would additionally falsify information in the Lexington 859 invoice regarding what service was provided or where it was provided.

13

83.    Maddix would then pay the Lexington 859 invoice from Oak 44's accounts.

84.    Thus, from Gaston's perspective, Lexington 859 appeared to be a bona fide general services and contracting company in the Lexington area providing genuine services to Oak 44-managed property.

85.    Gaston did not know that Lexington 859 was merely a sham entity, created by Maddix and existing solely on paper, to inflate Gaston's costs and enrich Maddix.

86.    To date, Gaston has determined that Maddix submitted at least $174,890 in fraudulent Lexington 859 invoices to Oak 44, including but not limited to the following Lexington 859 invoice numbers:

   a.  498207

   b.  498209

   c.  498257

   d.  498302

   e.  498303

   f.  498305

   g.  499111

   h.  499112

   i.  499114

   j.  499115

   k.  499120

l.   499125

m.  499133

n.   499121

o.   499132

p.   500166

q.   500169

r.   500177

s.   500182

t.   500184

u.   500187

v.   500202

w.  500214

x.   500255

y.   500279

z.   500288

87.     Not content to remit full payment to the tradesmen and skim on the Lexington 859 markup, with respect to at least 9 invoices submitted by tradesmen or vendors, Maddix and Lexington 859 did not pay the tradesman of vendor *at all*, and kept the entire amount paid by Oak 44 to Lexington 859.

88.     Maddix and Wood have stolen significantly more money than what is listed in this counterclaim (well in excess of $75,000) and Gaston is continuing to investigate and catalog their thefts and deceptions.

## COUNT ONE - FRAUD

89.     The allegations referenced above are hereby incorporated as if fully restated herein.

90.     Maddix and Wood's statements that they were purchasing goods or services for Oak 44-managed properties were material, were knowingly false, and were intended to induce reliance by Gaston (in the form of payment).

91.     Maddix and Wood's statements that Oak 44 employees were performing work or providing services at Oak 44-managed properties, when they were actually performing work or providing services at non-Oak 44-managed properties, were material, were knowingly false, and were intended to induce reliance by Gaston.

92.     Maddix's submission of inflated invoices from Lexington 859 was material, was knowingly false, and was intended to induce reliance by Gaston.

93.     Gaston did in fact rely on those materially false representations, by paying for the goods or services that Gaston reasonably believed were necessary for and incurred on behalf of the properties he managed.

94.     Gaston was damaged as a direct result, in an amount to be determined, by well in excess of $100,000.

95.     Because of Maddix and Wood's intentional defrauding of Gaston, Gaston is also entitled to an award of punitive damages and attorney's fees under KRS § 411.184(2), the common law, and/or any other relevant statute or doctrine.

96.     Because Maddix and Wood improved the Cayman Lane LLC "flip" house with more than $80,000 of goods and services paid for by Oak 44's credit cards, Gaston is entitled to an equitable lien, a materialman's lien, a constructive trust, or other similar interest over or in all property owned by Cayman Lane LLC, including in particular the home at 3660 Cayman Lane, Lexington, Fayette County, Kentucky (and/or any proceeds relating to that house or any other asset of Cayman Lane LLC).

## COUNT TWO – BREACH OF FIDUCIARY DUTY

97.     The allegations referenced above are hereby incorporated as if fully restated herein.

98.     Maddix and Wood, as managerial or supervisory employees of Oak 44, owed a fiduciary duty to Oak 44 and Gaston.

99.     Maddix and Wood breached that duty by engaging in the pattern of deceitful and fraudulent conduct described above.

100.    Gaston was directly damaged by such breach, in an amount to be determined at trial, but well in excess of $100,000.

17

101.    Maddix and Wood's breaches were done with oppression, fraud, or malice, and as a result, Gaston is entitled to an award of punitive damages and attorney's fees under KRS § 411.184(2), the common law, and/or any other relevant statute or doctrine.

## COUNT THREE – UNJUST ENRICHMENT

102.    The allegations referenced above are hereby incorporated as if fully restated herein.

103.    The defendants other than Maddix and Wood received a benefit from Gaston by virtue of their receipt (at the direction of Maddix and Wood) of goods and services paid for by Oak 44's credit cards.

104.    The defendants other than Maddix and Wood are aware of the benefits.

105.    The defendants other than Maddix and Wood have retained those benefits without paying for them, and it would be unjust to permit them to do so in light of the circumstances in which the benefits were obtained.

106.    In the alternative to Count One, Maddix and Wood received benefits from Gaston without paying for them through the transactions described above, and it would be unjust to permit them to do so in light of the circumstances in which the benefits were obtained.

107.    Gaston was damaged as a direct result, in an amount to be determined at trial, but well in excess of $100,000.

## COUNT FOUR – AIDING AND ABETTING

108.    The allegations referenced above are hereby incorporated as if fully restated herein.

109.    Defendants Cayman Lane, Lexington 859, Park 12 Property Management, 5515, and 5515 Hunt Club Ln knew about Maddix and Wood's fraud, breaches of fiduciary duty, and unjust enrichment.

110.    Defendants Cayman Lane, Lexington 859, Park 12 Property Management, 5515, and 5515 Hunt Club Ln consciously gave substantial assistance to Maddix and Wood in their commission of their offenses.

111.    Defendants Cayman Lane, Lexington 859, Park 12 Property Management, 5515, and 5515 Hunt Club Ln actually benefitted from Maddix and Wood's offenses against Gaston.

112.    Defendants Cayman Lane, Lexington 859, Park 12 Property Management, 5515, and 5515 Hunt Club Ln have aided and abetted Maddix and Wood, and therefore are jointly liable for all damages (including any and all punitive damages and attorney's fees).

## COUNT FIVE – CIVIL CONSPIRACY

113.    The allegations referenced above are hereby incorporated as if fully restated herein.

114.    Defendants Cayman Lane, Lexington 859, Park 12 Property Management, 5515, and 5515 Hunt Club Ln acted in concert with Maddix and Wood's tortious acts.

115.     Defendants Cayman Lane, Lexington 859, Park 12 Property Management, 5515, and 5515 Hunt Club Ln knew that Maddix and Wood's actions breached duties owed to Gaston, but participated in the actions anyway, for their own benefit.

116.     Defendants Cayman Lane, Lexington 859, Park 12 Property Management, 5515, and 5515 Hunt Club Ln have civilly conspired with Maddix and Wood, and therefore are jointly liable for all damages (including any and all attorney's fees).

**WHEREFORE,** having fully pleaded, Gaston prays for: (1) monetary judgment in his favor against all the Defendants, jointly and severally, in an amount to be determined at trial, but in excess of $75,000 in compensatory damages, plus punitive damages and attorney's fees under Kentucky law; (2) for the imposition of an equitable lien, a materialman's lien, a constructive trust, or other similar interest over or in all property owned by Cayman Lane LLC, including in particular the home at 3660 Cayman Lane, Lexington, Fayette County, Kentucky; and (3) for such other relief as to which he is entitled under the law.

Respectfully submitted,

 /s/ *Joshua M. Smith*
Joshua M. Smith (0098835)
Jeffrey M. Nye (pro hac vice)
Bailey E. Sharpe (pro hac vice)
STAGNARO, SABA &
PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-6715
(513) 533-2999 (fax)

jms@sspfirm.com
jmn@sspfirm.com
bes@sspfirm.com

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing was served by CM/ECF on all counsel of record.

/s/ *Joshua M. Smith*

Joshua M. Smith (0098835)