UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| Oak 44 Property Management, LLC | **Case No. 5:24-cv-0063** |
| Plaintiff | **Judge Caldwell** |
| v. | |
| Justin Maddix, et al. | **REPLY IN SUPPORT OF MOTION FOR LEAVE** |
| Defendants. | |

The motion for leave to amend should be granted. Stephen Wood and Cayman Lane raise three arguments in opposition to the motion. First, they argue that "the proposed counterclaim is not supported by the facts" or is futile. Second, they argue that the motion is unduly delayed, dilatory, or brought in bad faith. And third, they argue that the motion should be denied because it is "devoid of any meaningful legal analysis." The court should reject all three arguments and grant the motion for leave to amend.

**1. The motion is adequately supported and explained.**

This brief will address the last issue first. Wood and Cayman Lane assert (at 8-9, Page ID# 613-614) that "FRCP 27(a)(2) requires that a party's motion 'must state with particularity the grounds for the motion, the relief sought, and the legal argument necessary to support it.'" Their brief then argues that "Mr. Gaston asks this Court for

leave to amend his answer to assert counterclaims, yet, he has provided no legal basis to support those claims."

There are at least three problems with this argument. The first is that Civil Rule 27(a)(2) doesn't say that at all. Rule 27(a)(2) is about how to serve notice of a petition to take a perpetuation deposition. It has nothing to do with motions generally or motions for leave to amend specifically.

The second problem is that even though it's generally true that a motion should contain arguments necessary to support it, Wood and Cayman Lane pull some sleight of hand here in their brief—they assert that a motion must have legal argument supporting *the motion*, but then argue that the motion should be denied because it does not provide any "legal basis to support [the] *claims*." *See* doc. 66 at Page ID# 614 (emphasis added). A motion for leave to amend and assert a counterclaim does not need legal argument to support *the counterclaim*. It merely needs legal argument to support the motion for leave to amend. Counterclaims, like all pleadings, are subject to a notice pleading and plausibility standard.

The third problem is that the motion for leave *does* make argument as to why leave should be granted. It specifically explains (see doc. 64, Page ID# 576-578) that Gaston did not assert the claims at the time he answered because those claims were already the subject of a different pleading. It was only later (after the Court's ruling in doc. 55, and more precisely after the Court sua sponte reopened the case in doc. 57) that

2

it became clear that Gaston should (or even could) raise the claims. Gaston then did so shortly thereafter—within the timeline that the parties agreed on and that the Court ordered for amendments to the pleadings. *See* doc. 59 at Page ID# 562, §4(a) (parties' 26(f) report proposing amendment deadline); doc. 60 at Page ID# 566, §1(b) (ordering the same deadline).

Wood and Cayman Lane argue that *Pittman v. Franklin*, 282 Fed. Appx. 418 (CA6 2008) supports their contention that Gaston's motion is not adequately supported. That case does not support their argument at all.

*Pittman* was a medical negligence case brought against several defendants. All of the defendants answered, but "None of the defendants, however, asserted an affirmative defense of comparative fault." *Pittman* at 421. The court originally set a deadline for amendments to the pleadings in June 2005. *Id.* The scheduling order was modified at least once, and the deadline to amend pleadings was eventually re-set to December 2005. *Id.* at 422.

One of the defendants—Franklin—then filed a motion for leave to amend her answer and assert comparative fault as a new defense *six months after the extended deadline* for motions for leave to amend. *Id.* at 425.

That untimeliness alone was not sufficient for the court of appeals to conclude that the motion should be denied. *See id.* ("'undue delay' is not necessarily dispositive" on whether leave should be granted). The court observed that the proposed amended

3

answer that Franklin wanted to file in that case would have been her *fourth* answer in the case, and she had never before asserted the defense despite comparative fault having been at issue in several motions earlier in the case, and despite the fact that "Franklin was on notice regarding Pittman's theory of negligence with respect to all defendants" much earlier. *Id.* (in addition to failing to assert the defense in her original answer, Franklin also had failed to assert the defense via amendment "two times prior to her belated motion" for leave to amend). *See also id.* at 421-22 (comparative fault was at issue in briefs filed on September 23, 2005[1], March 28, 2006, and approximately April 2006—but Franklin did not assert the defense in any of her three earlier answers).

Even *that* wasn't sufficient to affirm the denial of the motion. The court *also* said that allowing the amendment six months after the deadline to amend would have prejudiced the plaintiff. *See id.* at 425. When the plaintiff agreed not to oppose the summary judgment motions of earlier defendants, it requested the court to order that the remaining defendants be precluded from asserting that the former defendants were comparatively at fault. The plaintiff's position on this point "was predicated on the fact that none of the remaining defendants, including Franklin, had pleaded comparative fault in their answers to her complaint." *Id.* at 426. "To allow Franklin to assert a

---

[1] The *Pittman* case actually indicates that this date was September 23, 2004—but given that the complaint was not filed until December 2004, and that the discussion of the case's procedural background places the date just after events from April 2005 and just before events from December 2005, it is clear in context that the "2004" date is a typo, and the date was actually 2005. *See Pittman* at 422.

4

comparative fault defense at this stage in the litigation would limit Pittman's ability to establish the full liability of Franklin and the remaining Defendants." *Id.*

Finally, Wood and Cayman Lane assert (at 9, Page ID# 614) that the *Pittman* court denied the motion for leave to amend because Franklin "simply…quoted language from Rule 15(a)." But that quote was taken from the end of a paragraph in which the court was chastising Franklin for not explaining why she sought leave to amend many months after the deadline. *See id.* at 425 (in her motion, "Franklin offered no justification for her failure to amend her answer to include a comparative fault defense at earlier stages in the litigation."). This is what *Pittman* meant when it said that a motion for leave should be adequately supported by argument or explanation. When an issue had long been a live aspect of a case, and a party had repeatedly made the strategic decision not to raise it (or, perhaps, had simply repeatedly ignored it), and then wants to raise the issue late in the litigation, many months out of time, and in a way that would prejudice opposing parties—then of course a court should be skeptical of granting leave.

This case is nothing like *Pittman* at all. Gaston sought leave to amend within the time set by the Court—not six months after a deadline that had already been extended by many months. Gaston has not previously amended any pleading—let alone filed *three* earlier pleadings—and at the time the prior pleading was made Gaston was not on notice that he needed to raise these claims (which at the time had been raised by Oak

5

44). Gaston's amendment would not prejudice the opposing party; Wood and Cayman Lane have not acquiesced to judgments adverse to them vis-à-vis other parties based on Gaston's prior pleading or litigation strategy. And Gaston has not failed to explain why he (timely) sought leave when he did—Gaston's motion explains (and this brief again has explained) that Gaston did not raise the claims earlier because they were already the subject of another party's pleading, and until the Court's ruling, Gaston had no reason to think he needed to (or could) assert the claims.

The motion is adequately supported, and it should be granted.

**2. The motion is not made in bad faith or with a dilatory motive.**

Wood and Cayman Lane's second argument in opposition to the motion (at 7-8, Page ID# 612-613) is that the motion is made in bad faith or with a dilatory motive. For this argument they rely on *Drake v. Walmart, Inc.*, 2020 U.S. Dist. LEXIS 259002 (N.D. Tex. no. 3:20-cv-581, Oct. 19, 2020).

The idea Gaston's timely motion for leave to amend is anything like the conduct in *Drake* is fairly shocking. Here is what happened in *Drake*.

Eight years before the complaint was filed, the plaintiff had been declared a vexatious litigant, and as such he had been ordered not to file any pleadings without leave of court. The plaintiff nevertheless filed a complaint based on an allegation that he'd been injured when boxes fell off a shelf in the store, then filed an amended complaint two weeks later. When the defendant moved to dismiss and raised the

6

vexatious litigator issue, the plaintiff "then filed another amended complaint (the 'Second Amended Complaint'), without leave of court, adding constitutional claims and over 35 defendants, including, inter alia, defense counsel's law firm, multiple state and federal judges, Travis County, and government officials in the Texas Attorney General's Office." *Drake* at *3. That Second Amended Complaint included allegations "that the judges [named as defendants], whom Plaintiff attests to hold in lesser regard than Osama Bin Laden and as 'unworthy of the oaths they took before God,' have previously 'abused and misused [the vexatious litigant order] to dismiss the Plaintiffs [sic] cases." [cit.] Because such 'terrorist judges have immunity,' Plaintiff also threatened to further amend his pleadings to include the judges' 'spouses and children who do not have immunity.' [cit.]" *Id.*

Then, "Not completely satisfied with his Second Amended Complaint, ten days later, Plaintiff filed the instant Motion for Leave to File Amended Complaint," and "[w]ithout waiting for a ruling on the motion for leave, and without the written consent of Defendants, Plaintiff filed his 100-page long amended complaint (the 'Third Amended Complaint') the same day." *Id.* at *3-4.

The court criticized the plaintiff for his "repeated procedural failures," and explained that neither the second nor third amended complaints complied with either Rule 15(a) or the court's own scheduling order. *Id.* at *7-8. The court also explained that the plaintiff had had "at least four lawsuits dismissed based on his failure to comply"

7

with the vexatious litigant order in the two years preceding the filing this case. *See id.*at *8-9.

The combination of the repeated refusal to follow the rules, and the attempted addition of several dozen partes and claims that were wholly unrelated to the personal injury claim that started the case, led the court to conclude that the motion for leave to amend was filed in bad faith, and with the improper purpose of attempting to avoid the imminent dismissal based on the violation of the vexatious litigant order. *Id.* at *9. The court also explained that the second and third amended complaints raised issues— namely, a collateral attack on a vexatious litigant order against dozens of new parties— that were so "remote from the other issues" raised in the original complaint (a personal injury case) that it would unfairly prejudice the defendants to force them to litigate the issues in that case. *Id.* at *10.

Wood and Cayman Lane make no effort to explain how *Drake* bears any resemblance at all to this case.

It doesn't. This case involves a single motion for leave to amend, made within the time permitted by the rules and scheduling order, made with the purpose of asserting claims that were initially believed to belong to another party, and made to assert claims that are directly related to those raised in the original complaint. Nothing about that evidences bad faith or dilatory motive.

8

### 3. The motion is not futile.

Wood and Cayman Lane's final argument (at 4-7, Page ID# 609-612) is that the claims asserted in the proposed amended counterclaim do not belong to Gaston, and so amendment would be futile.

The thrust of this argument—which prematurely asks the Court to decide the merits of the claims with no evidence whatsoever[2]—is that the Court's decision on the motion to dismiss Oak 44's claims conclusively established that *no one can ever raise fraud claims based on the facts in the complaint and proposed counterclaim.*

Certainly there is nothing in the Court's decision that says this. The argument was not raised or briefed by the parties. Even Wood and Cayman Lane concede (at 4, Page ID# 609) that "there does not appear to be any direct Wyoming authority" on point for their argument. The argument should be rejected for that reason alone.

It is important for the Court to understand, too, that Wood and Cayman Lane have continued to misrepresent the facts as alleged in both the original complaint. They characterize the motion and counterclaim as asserting that Gaston inherited the claims from Oak 44 after Oak 44 went defunct. More specifically, they assert (at, e.g., 5, Page ID# 610) that the claims accrued to Oak 44 before it became defunct, and that in order

---

[2] It is not surprising that these parties (especially Wood) are desperate to ensure that the Court does not see the massive, and accumulating, evidence of the fraud that they perpetrated.

9

for Gaston to assert the claims now, he would need to prove that under Wyoming law a defunct LLC's assets become property of the sole member.

But that is not at all what is alleged to have happened. The Court has concluded that Oak 44 became defunct in October 2021. *See* doc. 55, Page ID# 533. No fraud had yet occurred as of October 2021. The fraud is alleged to have started in approximately July 2022. *See* Counterclaim, doc. 64-1, at ¶3-5 (Oak 44 administratively dissolved in October 2021, and Gaston operated as sole proprietor from and after that time) and at ¶49, 79 (earliest alleged fraud occurred in July and August 2022). The fraud claim therefore did not exist when Oak 44 became defunct, and the fraud claim therefore cannot—under the current law of the case—be an asset that Oak 44 needed to (or even could) transfer to anyone upon its dissolution.

Instead, the thesis of the counterclaim—which is the only possible result under the Court's decision and the law of the case—is that the victim of the fraud in 2022 and 2023 was Gaston individually. It cannot be otherwise; the Court has determined that Oak 44 did not exist at the time of the fraud. The claim therefore belongs to Gaston in the first instance. (That's true even if Gaston did business under the name of Oak 44. Wood and Cayman Lane make no argument and cite no law holding that a fraud claim is forfeited if an individual victim of fraud was defrauded while using a trade name.)

Moreover, even if the chronology were as Wood and Cayman Lane represented it, then consider the logical conclusion of their argument: it would mean that if an LLC

is administratively dissolved, then any person who defrauded it would get off scot-free. Wood and Cayman Lane's theory is that a defunct entity can never sue to recover for any fraud, period, and also cannot wind up and distribute assets to its sole member, period. If that is the case, then there is nothing preventing anyone from searching out administratively dissolved or defunct entities on the secretary of state's web site and defrauding those entities willy-nilly, without consequence. There is no support in statutory law, common law, or policy for such an anarchic outcome.

**CONCLUSION**

Rule 15(a) instructs that "The court should freely give leave when justice so requires." Courts have acknowledged that this rule "evinces a bias in favor of granting leave to amend," and that "[l]eave to amend should be liberally granted, when the plaintiff might be able to state a claim based on the underlying facts and circumstances." *AAPS v. ABIM*, 103 F.4th 383, 394 (CA5 2024). A motion for leave to amend should only be denied as futile if it is clear that "the amendment could not withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss." *Sinclair v. Meisner*, 2022 U.S. App. LEXIS 35922, at *9 (CA6 no. 22-1264, Dec. 29, 2022). The standard for dismissal under Rule 12(b)(6), of course, is that a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*

The proposed amended counterclaim plainly satisfies this standard and would survive a Rule 12(b)(6) motion. It alleges, in detail, that Wood, Cayman Lane, and others

11

perpetrated a massive fraud in which they use their employer's credit cards to purchase goods for personal use and for their own separate business interests, and directed their employer to pay inflated invoices while they skimmed off the top. The counterclaim includes names, dates, item descriptions, and even transaction invoice numbers. There is no doubt that it satisfies the plausibility standard, and if the alleged facts are proven to be true, under the law of the case Gason would be entitled to recover as alleged. The motion is not futile and should be granted.

Respectfully submitted,

 /s/ Joshua M. Smith
Joshua M. Smith (0098835)
Jeffrey M. Nye (pro hac vice)
Bailey E. Sharpe (pro hac vice)
SSP Law Co., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-6715
(513) 533-2999 (fax)
jms@sspfirm.com
jmn@sspfirm.com
bes@sspfirm.com

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing was served by CM/ECF on all counsel of record on the date of filing.

 /s/ Joshua M. Smith
Joshua M. Smith (0098835)

12